Darlus JOHNSON, Appellant–
Claimant Below,

v.

The ESTATE OF Jean RAYBURN,
Appellee.

No. 33A04–9104–CV–92 [1].

Court of Appeals of Indiana,
Third District.

March 5, 1992.

1. This case was diverted to this office by order of the Chief Judge.

Michael J. Tosick, Greenfield, for appellant.

Kevin W. Ault, Rushville, for appellee.

STATON, Judge.

Darlus Johnson appeals the denial of her claim against the Estate of Jean Rayburn (Estate). Johnson alleged that Edward Rayburn fraudulently conveyed real estate to Jean Rayburn prior to her death in order to avoid paying an $80,000 award levied by the Industrial Board (now Worker's Compensation Board) in 1985. The Board entered the award following a hearing into the death of Johnson's husband, who was killed in a logging accident while working

for Edward Rayburn. Rayburn was not carrying worker's compensation insurance at the time.

Alleging that she had a lien on the property conveyed to Jean Rayburn, Johnson filed a claim against the Estate. The trial court denied her claim, and Johnson appeals, presenting this court with the following issues for review:

 I. Whether the trial court erroneously excluded Johnson's testimony pursuant to the "dead man's statute."[2]

 II. Whether the trial court erroneously disregarded the testimony of Edward Rayburn pursuant to the same statute.

 III. Whether the trial court's failure to find a fraudulent transfer was contrary to law.

We reverse and remand.

In a case tried to the court, Darlus Johnson sought to introduce her own testimony and that of Edward Rayburn, and counsel for the Estate objected on the basis of the dead man's statute. Edward Rayburn, the surviving spouse of Jean Rayburn, was the executor of his wife's Estate. The trial court took the objection under advisement and allowed the testimony, subject to his later ruling on the competency of the witnesses. In the order denying Johnson's claim, the trial court held that the witnesses were not competent to testify, and that even considering Rayburn's testimony, Johnson had not adduced sufficient evidence to succeed on her claim.

Indiana's dead man's statute, unaltered since its passage in 1881, provides in relevant part:

In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate[.]

IC 34-1-14-6.

 ■ The general purpose of this statute is to protect decedent's estates from spurious claims. *State Farm Life Insurance Co. v. Fort Wayne National Bank* (1985), Ind.App., 474 N.E.2d 524, 526. Dead man acts are rules of fairness and mutuality that require, when the lips of one party to a transaction are closed by death, the lips of the surviving party are closed by law. *Id.; Satterthwaite v. Estate of Satterthwaite* (1981), Ind.App., 420 N.E.2d 287, 289, *reh'g denied.*[3]

 ■ A witness is rendered incompetent under the dead man's statute when the following requirements are met:

 a. The action must be one in which an administrator or executor is a party, or one of the parties is acting in the capacity of an administrator or executor;

 b. It must involve matters which occurred within and during the lifetime of the decedent;

 c. It must be a case in which a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator;

 d. The witness must be a necessary party to the issue and not merely a party to the record;

 e. The witness must be adverse to the estate and must testify against the estate.

*Satterthwaite, supra,* at 289-90. Where the trial court rules on witness competency the ruling will not be reversed absent a clear abuse of the trial court's discretion. *Myers v. Manlove* (1913), 53 Ind.App. 327, 101 N.E. 661. An abuse of discretion will be found when the ruling is against the logic and effect of the facts and circumstances before the trial court. *Porter v.*

---

**2.** IND.CODE 34-1-14-6 (1988).

**3.** *But see* 2 J. Wigmore, Evidence § 578 (Chadbourn rev.1979) (commenting that the rule is an "anomaly" that bars from proof far more honest claims than spurious ones); 3 B. Jones, Evidence § 20:20 *et seq.* (6th ed. 1972); C. McCormick, Evidence § 65 (3rd ed. 1984).

*Porter* (1988), Ind.App., 526 N.E.2d 219, 222, *trans. denied.*

Johnson contends that the trial court erred in finding her incompetent to testify because her testimony did not concern any transactions between her and the decedent, Jean Rayburn. The Estate suggests that the Indiana General Assembly intended to cover this area of witness competency with a blanket prohibition. We are not persuaded, however, that the legislature meant to paint the judicial landscape with so broad a brush.

■ As stated above, the purpose of the dead man's statute is to put the surviving party on equal footing with the decedent with respect to a matters that occurred during the decedent's lifetime. However, we do not agree this statute renders the witness incompetent for all purposes. The application of the statute is limited to circumstances in which the decedent, if alive, could have refuted the testimony of the surviving party. Otherwise, there would be no inequity to be rectified.

■ In this case, Johnson did not take the witness stand to offer any testimony as to any transaction she had with Jean Rayburn during Rayburn's lifetime. Her testimony consisted solely of evidence pertaining to Edward Rayburn's attempt to secure a full release of liability from Johnson approximately two weeks after her husband was killed in the logging accident. Although Jean Rayburn was alive during this period, she was not a party to this incident. Thus, there was absolutely no testimony from Johnson that Jean Rayburn could have refuted, had she been alive. Under these circumstances, Johnson was not incompetent to testify. *See Denny v. Denny* (1890), 123 Ind. 240, 23 N.E. 519, *reh'g denied* (conversation between claimant and an heir to the estate, even though it might have occurred in the decedent's presence, was not a "matter" which occurred with the decedent during his lifetime); *Matter of Estate of Niemiec* (1982), Ind.App., 435 N.E.2d 570, *trans. denied; Citizens State*

*Bank v. Kelley* (1959), 130 Ind.App. 376, 378–79, 162 N.E.2d 322, 323, *trans. denied* ("An objection to the competency of a witness to testify at all as to any matter that occurred during the lifetime of decedent is properly overruled where the witness is competent to testify as to some matters."); *Baker v. State Bank of Akron* (1942), 112 Ind.App. 612, 44 N.E.2d 257, *trans. denied.*

■ Our conclusion that the dead man's statute applies only where the claimant is prepared to testify as to matters or transactions concerning the decedent, and not merely as to matters that occurred while the decedent was alive, is in accord with the Indiana cases interpreting the provision. *See, e.g., Satterthwaite, supra,* at 291 (witness held incompetent to testify as to promises made by decedent during decedent's life to devise real estate to witness); *State Farm Life Insurance, supra,* at 527 (agent negotiating insurance agreement on behalf of principal ruled incompetent to testify concerning statements made by decedent when he applied for insurance); *Matter of Estate of Palamara* (1987), Ind. App., 513 N.E.2d 1223, 1232, *reh'g denied* (although challenge to competency was waived on cross-examination, witness would have otherwise been incompetent to testify that decedent earlier promised to provide witness with financial security for the rest of her life); *United Theological Seminary v. Burkhart* (1986), Ind.App., 494 N.E.2d 361, 366, *trans. denied* (agent of not-for-profit organization held incompetent to testify as to contribution pledge made by decedent in his lifetime). Because Johnson was not called to testify as to any matter or transaction relating to the decedent, it was an abuse of discretion for the trial court to disregard her testimony.

■ Johnson next contends that the trial court erred by also disregarding the testimony of Edward Rayburn, the personal representative of his late wife's estate.[4] The Estate contends that the dead man's statute clearly provides that a personal rep-

---

4. The trial court actually concluded that Edward Rayburn was not competent to testify, but that even if he was competent, his testimony failed to support Johnson's fraudulent conveyance claim. Record, pp. 5–6.

resentative is not a competent witness. The latter contention has no foundation in the statute or in case law. For a witness to be rendered incompetent to testify as to a "matter" under the statute, the witness must have an interest adverse to the estate. IC 34–1–14–6. The undisputed fact is that Edward Rayburn has no interest adverse to the Estate. Moreover, IC 34–1–14–10 gives any party to a suit under the dead man's statute the right to call and examine any adverse party as a witness. As this case involves a suit against an estate under IC 34–1–14–6, and as Edward Rayburn is an adverse party, Johnson was entitled to call him as a witness—just as Rayburn could have called Johnson to the stand to testify even though she would have otherwise been incompetent as a witness. *Palamara, supra,* at 1232. *See also Julian v. Bliss* (1924), 82 Ind.App. 597, 145 N.E. 442; *Reed v. Farmers Bank of Frankfort* (1918), 67 Ind.App. 425, 119 N.E. 261. Therefore, the trial court erred in disregarding Edward Rayburn's testimony.

■ This brings us to Johnson's final contention: that the court erred by denying her claim against the Estate.[5] Johnson appeals from a negative judgment. As such, we must determine whether the judgment is contrary to law. *McClure Oil Corp. v. Murray Equipment, Inc.* (1987), Ind.App., 515 N.E.2d 546, *reh'g denied.* A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Ashland Pipeline Co. v. Indiana Bell Telephone Co., Inc.* (1987), Ind.App., 505 N.E.2d 483, *trans. denied.* Johnson argues that the undisputed evidence reveals indicia of a fraudulent conveyance from Edward Rayburn to Jean Rayburn. The Estate asserts that the trial court correctly found that Johnson failed to support her claim with sufficient evidence.

■ Under Indiana law, a conveyance of real estate, "made or suffered with the intent to hinder, delay or defraud creditors or other persons of their lawful damages," shall be void as to the person sought to be defrauded. IC 32–2–1–14. This section must be read together with the following provision:

The question of fraudulent intent, in all cases arising under the provisions of this chapter, shall be deemed a question of fact; nor shall any conveyance or charge be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration.

IC 32–2–1–18; *LaPorte Production Credit Association v. Kalwitz* (1991), Ind.App., 567 N.E.2d 1202, 1205, *reh'g denied.*

■ Fraudulent intent may be inferred from the following indicia, or "badges of fraud" present in a given transaction:

the transfer of property by a debtor during the pendency of a suit; a transfer of property that renders the debtor insolvent or greatly reduces his estate; a series of contemporaneous transactions which strip a debtor of all property available for execution; secret or hurried transactions not in the usual mode of doing business; any transaction conducted in a manner differing from customary methods; a transaction whereby the debtor retains benefits over the transferred property; little or no consideration in return for the transfer; a transfer of property between family members.

*Jones v. Central National Bank of St. Johns* (1989), Ind.App., 547 N.E.2d 887, 889–90; *U.S. Marketing Concepts v. Don Jacobs Buick–Subaru, Inc.* (1989), Ind. App., 547 N.E.2d 892, 894, *reh'g denied.* As no single indicium constitutes a showing of fraudulent intent per se, the facts must be taken together to determine how many badges of fraud exist and if together they amount to a pattern of fraudulent intent.

---

5. Rather than remand for a new trial in light of our resolution of the first two issues, we reach the merits of Johnson's third issue on the record presented to this court because the trial court received the disputed testimony into evidence, subject to its later ruling on the competency of the witnesses.

*Jones, supra,* at 890. This determination rests, in the first instance, with the trier of fact. *Id.*

 Reviewing the circumstances of this case, we find the following uncontroverted evidence: Johnson's husband was killed in a logging accident while in Rayburn's employ on February 6, 1984. Approximately two weeks later, Rayburn attempted to secure a release from all claims that Johnson may have against him, but Johnson refused. On February 21, 1984, Rayburn conveyed the real estate in question to Jean Rayburn. The timing of this transaction raises an inference of fraudulent intent.

 Moreover, the evidence is not disputed that Rayburn lived with Jean Rayburn in a home situated on one of the lots conveyed to her in February of 1984. In fact, Rayburn remained in the home until after his wife's death in 1987, when the home was destroyed by fire. Thus, he did retain benefits of the property transferred. Additionally, despite the trial court's finding that the Rayburns were divorced at the time of the conveyance, the fact that they were married previously and lived together in the year of the transfer and every year thereafter, plus the fact that the Rayburns remarried prior to Jean Rayburn's death, leads us to conclude that the transfer was effectively between family members.

The parties disagree on the element of consideration. While Johnson asserts that Jean Rayburn gave nothing in return for the land, the Estate claims that Edward Rayburn conveyed the property as partial settlement in a 1984 divorce proceeding, where Jean Rayburn released her interest in pieces of heavy equipment and trucks used in Edward Rayburn's logging operation. Appellee's Brief, p. 2. However, the undisputed evidence, through the testimony of Edward Rayburn, reveals that the parties *were divorced from 1971 until 1987,* at which time they remarried. There was no 1984 divorce proceeding. Given this uncontradicted evidence, we are also persuaded that the transaction was conducted in a manner different from customary methods. The evidence further reveals that the only piece of equipment in the logging business titled in Jean Rayburn's name was a semi-tractor truck. In sum, the heretofore disregarded testimony of Johnson and Rayburn supports a finding of nearly every badge of fraud, as those indicia are articulated in *Jones, supra,* at 889–90.

The Estate contends that, regardless of the indicia of fraud present in this case, the trial court should be affirmed because Johnson failed to prove that Jean Rayburn had notice of the purported fraud in the conveyance of the property. The Estate relies on the following statute:

> The provisions of this chapter shall not be construed to affect the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor or assignor, or of the fraud rendering void the title of such grantor or assignor.

IC 32–2–1–17. Because we have determined that the evidence leads solely to the conclusion that no valuable consideration was given for the real estate, this statute is not applicable. *See First National Bank of Frankfort v. Smith* (1898), 149 Ind. 443, 49 N.E. 376.

 As the trial court found that both Johnson and Rayburn were not competent to testify, the court was unable to consider evidence supporting the following undisputed facts: Edward Rayburn transferred thirty one parcels of valuable real estate, for little or no consideration, to his ex-wife, mere days after Darlus Johnson refused to release him from liability for worker's compensation benefits. The transfer greatly reduced Rayburn's assets. Rayburn lived with his ex-wife on one of the lots, and continued to live there after her death. Considering all of the testimony elicited at the hearing, we find that the evidence is without conflict and leads to a result opposite that reached by the trial court. Therefore, the decision is contrary to law. *Ashland Pipeline Co., supra,* at 489.

This case is remanded to the trial court with the instruction to enter judgment in

favor of appellant, Darlus Johnson. Costs assessed against the appellee.

GARRARD and BARTEAU, JJ., concur.