**William F. GIPPERICH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 57A03–9408–CR–287.

Court of Appeals of Indiana.

Dec. 11, 1995.

Transfer Denied Feb. 14, 1996.

---

Kevin L. Likes, Likes & Associates, Auburn, for Appellant.

Pamela Carter, Attorney General of Indiana and Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

HOFFMAN, Judge.

Appellant-defendant William F. Gipperich appeals the trial court's denial of his motions to withdraw his guilty pleas on charges of child molesting and forgery. The facts relevant to the appeal are recited below.

On September 27, 1993, Gipperich and the State entered into an agreement by which Gipperich pleaded guilty to two counts of child molesting, as Class D felonies; one count of child molesting, as a Class C felony; and one count of forgery, a Class C felony. On September 30, 1993, a guilty plea hearing was held at which Gipperich acknowledged his constitutional rights, the factual bases for the guilty pleas, and the terms of the guilty plea agreement he executed on September 27, 1993. The cause was set for sentencing.

On February 9, 1994, Gipperich filed a motion to withdraw his guilty pleas. The motion alleged that Gipperich would not have entered into the agreement had he known that the judge who presided at a hearing preliminary to the guilty plea hearing would recuse himself and had he known the amount of restitution for counseling and medical fees incurred by the victims which was his responsibility under the agreement. On February 11, 1994, the court, with a special judge presiding, held a hearing on Gipperich's motion to withdraw. The court denied Gipperich's motion to withdraw and continued the sentencing hearing to April 29, 1994.

On April 28, 1994, Gipperich filed his second motion to withdraw the pleas of guilty. In the second motion, Gipperich complained that he did not believe he was under oath at the guilty plea hearing and that the factual bases he gave were untrue. During the second hearing, Gipperich stated that he lied to the court at the September 30, 1993 guilty plea hearing when he stated that he had performed the acts for which he was pleading guilty.

On May 5, 1994, the motions to withdraw were denied, and the court sentenced Gipperich pursuant to the plea agreement. On July 29, 1994, the State filed a motion for restitution requesting that the trial court hold a hearing to determine Gipperich's assets and income from which restitution could be awarded. After the hearing, the trial court ordered funds held in Gipperich's attorneys' trust accounts to be attached and deposited with the clerk of the court for disbursement by court order for payment of the victims' counseling fees. This appeal ensued.

As restated, Gipperich raises four issues for review:

(1) whether the trial court abused its discretion in determining that Gipperich could not withdraw his guilty pleas prior to sentencing;

(2) whether the sentence imposed by the trial court deviated from the plea agreement;

(3) whether the trial court erred in determining that Gipperich was not indigent and imposing an additional term of imprisonment for payment of fines; and

(4) whether the trial court abused its discretion by attaching Gipperich's funds held in his attorneys' trust accounts for payment of restitution.

■ First, Gipperich attacks the court's denial of his motions to withdraw his guilty pleas. The governing statute, IND.CODE § 35-35-1-4(b) (1993 Ed.) provides that after entry of a guilty plea, but before imposition of a sentence, upon verified motion the court may allow a defendant to withdraw his plea

for any fair and just reason, unless the State would be substantially prejudiced by reliance upon the defendant's plea. *Smith v. State* (1992), Ind.App., 596 N.E.2d 257, 258. The ruling on a motion to withdraw a guilty plea is reviewable only for an abuse of discretion. *Id.* However, a court shall allow withdrawal whenever the defendant proves withdrawal is necessary to correct a manifest injustice. *Id.*

Here, Gipperich contends that he gave the factual bases for the convictions to spare the victims the emotional demands of a trial and that he would not have pleaded guilty to the charges had he known the first judge would recuse himself. He alleges that he lied at the guilty plea hearing when he admitted to the charges. Thus, according to Gipperich, when he brought to light his deception prior to sentencing, the failure to allow withdrawal of the guilty pleas is tantamount to professing innocence while pleading guilty.

Collectively, Gipperich's reasons for withdrawal stated within his motions and argued on appeal amount to a credibility issue. The court was faced with a determination whether Gipperich lied at the guilty plea hearing as he contended or later when he gave subjective reasons for withdrawal of the guilty pleas.

■ In *Smith*, this Court determined that the existence of a potential defense based only on a defendant's own testimony, even in the absence of prejudice to the State and when the court has not formally accepted the guilty plea, fails to carry the defendant's burden to demonstrate that withdrawal is necessary to correct a manifest injustice. *Id.* at 259. Gipperich relies solely upon self-serving statements to request withdrawal.

In rejecting Gipperich's delinquent protestations of innocence, the trial court noted objective evidence of Gipperich's guilt. Evidence of Gipperich's guilt was garnered through probable cause affidavits, court documents, statements by the victims, and physical evidence seized at Gipperich's home. Gipperich acquired legal guardianship of one of the victims, a young girl to whom he was not related. Pursuant to a search warrant for Gipperich's home, police officers seized such items as material describing the method to obtain legal guardianship over children and the pitfalls he experienced with child welfare services, and medical supplies and literature regarding gynecological examinations, along with an examination table complete with stirrups. The evidence revealed that Gipperich had requested that the mother of some of the victims give him "power of attorney" over them. Also, he presented documents signed "W.F. Gipperich, P.A." to the school attended by some of the victims stating that the victims were to take certain medications. The trial court did not abuse its discretion in determining that Gipperich's self-serving statements after the guilty plea hearing were incredible and constituted an attempt to manipulate the system. *See Atchley v. State* (1993), Ind., 622 N.E.2d 502, 503, Krahulik, J., concurred in result; DeBruler, J., dissented (court could accept guilty plea without defendant's acknowledgment of factual basis where independent evidence of guilt existed).

■ Next, Gipperich complains that the court deviated from the terms contained within the plea agreement. The trial court ordered Gipperich to pay $10,000.00 in fines for each of four felonies to which he pleaded guilty. Gipperich submits that a court may not alter the terms of a plea agreement once accepted. Further, Gipperich contends that he would not have entered into the agreement had he known that he would be required to pay $40,000.00 in fines. Further, the court ordered Gipperich to be imprisoned until the fines were paid.

■ It is true that a court is bound by the terms of a plea agreement which it accepts. *Roe v. State* (1992), Ind.App., 598 N.E.2d 586, 588. When the agreement contains a sentencing recommendation, the court is obliged to impose the sentence in accordance with that recommendation and cannot increase or decrease the sentence. *Id.*

Here, the court accepted the plea agreement which provided for payment of counseling fees for the victims and the payment of costs. Costs are separate from fines. *See* IND.CODE §§ 33–19–2–2 through 33–19–2–5 (1987 Supp.) (costs in criminal action not part of sentence and usually may not be suspended; any fine or penalty assessed in

addition to costs). Thus, the court improperly wavered from the terms of the accepted plea agreement by imposing fines for which no provision existed in the agreement. Accordingly, the portion of the sentencing order requiring the payment of fines and providing for imprisonment for their payment is reversed.

■ Finally, Gipperich complains that the trial court erred in determining that funds in his attorneys' trust accounts paid prospectively by Gipperich could be attached for use as restitution. Upon motion of the State, a hearing was held requesting a determination regarding Gipperich's assets and his ability to pay restitution. Evidence revealed that Gipperich gave money to counsel for his representation in pending civil and criminal matters arising from the molestations. The money was being held in the respective counsels' trust accounts.

After a hearing, the trial court directed the attorneys to pay $5,000.00 of the money held in trust accounts to the clerk of the court for deposit in an interest bearing account until further order of the court. The court had been apprised of Gipperich's intent to appeal the denial of his request to withdraw the guilty pleas and the propriety of taking the funds.

■ Whether money held by attorneys for prospective legal fees was subject to attachment is controlled by the laws of fraudulent conveyances. *See* IND.CODE §§ 32–2–1–14 to 32–2–1–18 (repealed 1994); new provisions codified as Indiana Uniform Fraudulent Transfer Act, IND.CODE §§ 32–2–7–1 to 32–2–7–21 (effective for transfers as of July 1, 1994). The State argued at the hearing that Gipperich paid in advance for legal services not yet incurred to deny the victims and the State the restitution to which he agreed. The case law, developed under the now repealed statutory provisions, required indicia or "badges of fraud" such as:

> " 'the transfer of property by a debtor during the pendency of a suit; a transfer of property that renders the debtor insolvent or greatly reduces his estate; a series of contemporaneous transactions which strip a debtor of all property available for

execution; secret or hurried transactions not in the usual mode of doing business; any transaction conducted in a manner differing from customary methods; a transaction whereby the debtor retains benefits over the transferred property; little or no consideration in return for the transfer; a transfer of property between family members.' "

*Johnson v. Estate of Rayburn* (1992), Ind. App., 587 N.E.2d 182, 186, quoting *Jones v. Central National Bank of St. Johns* (1989), Ind.App., 547 N.E.2d 887, 889–890; *U.S. Marketing Concepts v. Don Jacobs* (1989), Ind.App., 547 N.E.2d 892, 894. The determination of the transferor's intent must be made upon the facts taken together and rests with the trier of fact. *Johnson,* 587 N.E.2d at 186–187.

Here, the money has been secured in an account awaiting resolution of the issue. The cause must be reversed in that the hearing did not meet the requirements of the statutory provisions. Further, the date of the transfers was not disclosed in the hearing; thus, it is unclear which statutory provisions apply. The issue of fraudulent conveyance may be redetermined through an appropriate action.

Pursuant to the foregoing, the cause is affirmed in part and reversed in part.

GARRARD and FRIEDLANDER, JJ., concur.