Donald B. FISHER, Appellant–Plaintiff,

v.

The ESTATE OF Nylah R. HALEY, Appellee–Defendant.

No. 02A05–9708–CV–357.

Court of Appeals of Indiana.

June 17, 1998.

Robert Owen Vegeler, Beers Mallers Backs & Salin, Fort Wayne, for Appellant–Plaintiff.

Terry L. Cornelius, Cornelius & Weingartner, Fort Wayne, for Appellee–Defendant.

## OPINION

RATLIFF, Senior Judge.

### Case Summary

Donald Fisher appeals an adverse judgment denying his claim against the Estate of

Nylah Haley. The Estate also appeals the trial court's denial of its request for an assessment of attorney fees. We affirm.

### Issues

Fisher presents two issues for our review, which we restate as:

1. Whether the trial court erred by ruling that Fisher was incompetent to testify under Indiana's Dead Man's Statute; and

2. Whether the trial court's findings of fact and conclusions of law that Fisher had knowledge of the facts which form the basis of his claim and is therefore estopped from asserting his claim were clearly erroneous.

In addition, the Estate raises two issues for our review:

1. Whether the trial court erred in ruling that Fisher's claim was a claim on open account subject to a six year statute of limitations; and

2. Whether the trial court erred in denying the Estate's request for an assessment of attorney fees against Fisher pursuant to Indiana Code section 34–1–32–1.

### Facts and Procedural History

Fisher is the president and majority shareholder of Mail, Inc. Haley was the vice president and office manager of the company, and was also a shareholder. As office manager, Haley did the bookkeeping, billed clients, and managed the corporate checking account. Haley had been an employee of the company for approximately nineteen years, and remained with the company until her death in 1995.

Following Haley's death, Fisher filed a claim with Haley's Estate for "[r]etained corporate earnings due together with interest on open account from 1989 through 1995 to claimant[,]" in the amount of $134,932.00. R. 14. Fisher's claim was denied by the co-personal representatives of Haley's estate, and the matter was docketed for trial. R. 17, 19. At the bench trial, the trial judge ruled that Fisher was incompetent to testify pursuant to the Dead Man's Statute, but accepted a proffer summarizing the testimony that Fisher would give if allowed to testify, as follows: after Haley's death Fisher discovered Mail, Inc. checks signed by Haley which were previously unknown to him. He believed the checks evidenced the transfer of Mail, Inc. assets for the benefit of Haley and her family without the knowledge or authority of the corporation. Haley had written Mail, Inc. checks to herself, to her husband, to fund the purchase of several vehicles for the personal use of herself and her family, to pay the costs of insuring those vehicles, and to pay other miscellaneous personal expenses. Fisher also found payroll checks and corresponding W–2's made out to Haley's daughter and endorsed by Haley, although the daughter was not an employee of Mail, Inc. Fisher introduced into evidence twenty-two exhibits which contained documentation to support his claim.

The estate offered testimony that Fisher participated in the vehicle transactions, that he had let Haley issue payroll checks in her daughter's name to evade the social security wage cap, and that he knew that Haley had on occasion made short term advances to the company to cover costs when the business was not able to, and then reimbursed herself when the business' cash flow improved. At the close of evidence, the Estate filed a petition alleging that pursuant to Indiana Code section 34–1–32–1, the Estate was entitled to an assessment of attorney fees against Fisher.

Following the trial, the court entered findings of fact and conclusions of law, which read in pertinent part as follows:

### Findings of Fact

1. At all relevant times, claimant [Fisher] has been the majority shareholder, by a large margin, of a corporation named Mail, Inc. which employed the decedent. . . .

2. At all relevant times, [Haley] was the largest minority shareholder of Mail, Inc. and the employee who ran the day-to-day operations of the corporation, including all bookkeeping.

3. However, Fisher was also in the corporate offices daily at all relevant times

and had full access to all corporate records....

4. During the course of her employment, and while a shareholder, [Haley] made short term advances to Mail, Inc. as needed, which she caused the corporation to later repay as funds were available....

5. In addition Fisher and [Haley] facilitated the purchase of motor vehicles for [Haley] and other family members ... through the corporation, with the corporation retaining titles for periods of years prior to trade to dealers or outright purchase by family members.

6. When [Haley] reached the age entitling her to receipt of Social Security benefits, she and Fisher desired that she continue in her capacity of head of the corporation's day-to-day operations, despite the fact that her receipt of Social Security benefits would limit the salary she could receive from Mail, Inc.

7. In order for Mail, Inc. to continue to receive the benefits of her employment ... despite the Social Security wage cap, [Haley] issued corporate checks and corresponding W–2's to [her daughter].

8. [Haley] then forged and endorsed these checks over to herself in order to receive compensation from Mail, Inc. and evade the Social Security wage cap.

. . .

11. Fisher now alleges that these transactions amount to wrongfully retained corporate earnings....

### Conclusions of Law

. . .

2. All of the activities which form the basis of Fisher's claim were untaken [sic] for one central purpose, namely, to evade federal and state taxation of [Haley] and/or her family.

3. Fisher also structured the motor vehicle transactions he directly participated in so as to avoid his own personal federal and state taxation.

4. Fisher received and retained direct or indirect benefit from all or substantially all of the activities which form the basis of his claim.

5. The pattern of conduct engaged in by Fisher and [Haley] over the course of [Haley's] employment with Mail, Inc. amounts to actual knowledge by Fisher of some of the activities complained of and at least constructive knowledge of all of the activities which form the basis of his claim.

6. Despite his actual and/or constructive knowledge of [Haley's] activities, Fisher chose to remain silent and receive the direct and/or indirect benefit which accrued therefrom.

7. By his contemporaneous silence, and acceptance of the resulting benefits, Fisher is now estopped from claiming that [Haley's] activities were injurious to him in any legally compensable manner....

8. Although the Court finds it to be a close question, [the Estate's] Petition for Assessment of Attorney Fees pursuant to *I.C.* § 34–1–32–1 is now DENIED.

. . .

WHEREFORE, judgment is now ENTERED for [the Estate] against [Fisher] on [Fisher's] claim in this cause.

R. 150–52.

### *DISCUSSION AND DECISION*

#### I.

Indiana's Dead Man's Statute provides in relevant part:

> In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate....

Ind. Code § 34–1–14–6.

 The general purpose of this statute is to protect a decedent's estate from spurious claims. *Paullus v. Yarnelle*, 633 N.E.2d 304, 308 (Ind.Ct.App.1994). Dead Man's Statutes are rules of fairness and mutuality requiring that, "when the lips of one party to a transaction are closed by death, the lips of

the surviving party are closed by law." *Johnson v. Estate of Rayburn*, 587 N.E.2d 182, 184 (Ind.Ct.App.1992). Rather than excluding evidence, the statute prevents a particular class of witnesses from testifying as to claims against the estate. *Paullus*, 633 N.E.2d at 308. A witness is rendered incompetent under the statute when the following requirements are met:

 a. The action is one in which an administrator or executor is a party, or one of the parties is acting in the capacity of an administrator or executor;

 b. The action involves matters which occurred within and during the lifetime of the decedent;

 c. A judgment or allowance may be made or rendered for or against the estate represented by such administrator or executor;

 d. The witness is a necessary party to the issue and not merely a party to the record; and

 e. The witness is adverse to the estate and testifies against the estate.

*Johnson*, 587 N.E.2d at 184. "The application of the statute is limited to circumstances in which the decedent, if alive, could have refuted the testimony of the surviving party." *Id.* at 185.

Where the trial court rules on witness competency, the ruling will not be reversed absent a clear abuse of discretion. *Id.* An abuse of discretion will be found when the ruling is against the logic and effect of the facts and circumstances before the court. *Id.*

Fisher contends that the trial court abused its discretion in finding him incompetent to testify. In this regard, Fisher makes several arguments. First, he attempts to remove himself from the operation of the statute by arguing that certain requirements for witness incompetency as set forth in *Johnson* are not met under the circumstances of this case. Specifically, Fisher contends that the requirement that the administrator be a party to the action is not met because his action lies against the Estate, not the administrators of the Estate. Fisher's claim was originally filed in the estate proceeding and was subsequently transferred to a civil cause number captioned "*Fisher v. Estate of Haley.*" The co-administrators were not specifically named parties, but the very purpose of administrators is to represent the estate of the decedent. Regardless of the caption of the case, clearly the co-administrators of Haley's estate were parties to the action, satisfying requirement (a) as set forth in *Johnson*, 587 N.E.2d at 184.

Fisher also contends that he is not a "necessary party to the issue" because he will "not receive a direct legal benefit from a judgment if the trial court were to award funds to Mail, Inc." Brief of Appellant at 9. "A party to the issue means the parties between whom there is a controversy submitted to the court for trial, the parties who are litigating the particular issue against whom or for whom the court will render judgment." *Satterthwaite v. Estate of Satterthwaite*, 420 N.E.2d 287, 290 (Ind.Ct. App.1981). However, a party who has an interest in the result is not automatically a "party to the issue." *Id.* An interest which renders a party incompetent as a witness is one by which the party will gain or lose by the direct legal operation of the judgment. *Id.* Fisher's claim is for "retained corporate earnings." If Fisher were to have prevailed on his claim, the judgment ultimately would have been in favor of the corporation. However, as an eighty-six percent shareholder in the corporation, Fisher personally would have benefitted substantially from a $135,-000.00 judgment for retained corporate earnings, which would then have been available for distribution to the shareholders. We therefore believe that Fisher is a "party to the issue," satisfying requirement (d).

Fisher also contends that the case law interpreting the Dead Man's Statute supports the exclusion only of conversations between the decedent and the claimant. However, as we have previously stated, the Dead Man's Statute does not exclude particular classes of evidence from being admitted, it prevents a particular class of witness from testifying altogether. *See Paullus*, 633 N.E.2d at 308. As long as the witness will be testifying adversely to the estate about matters concerning the decedent, he is in-

competent to testify. *Johnson*, 587 N.E.2d at 185. In this case, Fisher's proffer demonstrated that he would be testifying that Haley improperly and without authorization retained corporate earnings, but that he knew nothing of her actions. The Estate's position was that Fisher not only knew about the transactions, but also participated in them. Clearly, Fisher intended to testify adversely to the Estate about transactions between himself and Haley, and his testimony was of the kind that Haley could have refuted if she were alive. *See Johnson*, 587 N.E.2d at 185. Fisher is, therefore, an incompetent witness as to those transactions.

Finally, Fisher asserts that the Dead Man's Statute is unfair in its application: "The impact of Fisher's testimony is devastating to the Estate. The potential for Fisher to win if the evidence is not excluded is very real. . . . An abuse of discretion always occurs when a case is not decided on its merits because of lack of fairness." Brief of Appellant at 12–13. It is true that Fisher's testimonial evidence was excluded by the trial court's ruling that he was an incompetent witness. However, all of the documentary evidence which Fisher offered through the testimony of other witnesses to support his position that he did not know about the challenged transactions until after Haley's death was admitted into evidence, with the exception of four exhibits which Fisher withdrew before they were admitted. All parties were equally handicapped: Fisher in prosecuting his claim because he personally was deemed unable to take the stand as a witness by operation of the Dead Man's Statute, and the Estate in defending the claim because Haley could not take the stand. That is the equality the Dead Man's Statute was designed to provide. The trial court did not abuse its discretion in ruling that Fisher was an incompetent witness.

## II.

■ Fisher next raises the issue of whether the trial court's findings of fact and conclusions of law were clearly erroneous. In challenging the trial court's judgment, Fisher is appealing from a negative judgment. We will not reverse the judgment of the trial court unless it is contrary to law. *Pepinsky v. Monroe County Council*, 461 N.E.2d 128, 135 (Ind.1984). This court will set aside a negative judgment as contrary to law only when the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one. *Beneficial Mortgage Co. v. Powers*, 550 N.E.2d 793, 795 (Ind.Ct.App.1990). We will not reweigh the evidence or judge the credibility of the witnesses, and we will affirm the specific findings and conclusions of the trial court unless they are clearly erroneous. *Id.*

■ Fisher primarily challenges the trial court's conclusion that he had actual or constructive knowledge of the transactions complained of and that he was therefore estopped from asserting his claim. In support of this conclusion, the trial court found that Fisher was in the corporate offices every day except during an extended vacation each winter, and that he had full access to all corporate records, including the checkbook and all financial information. The trial court also found that Fisher facilitated the purchase of several motor vehicles through the corporation for Haley or members of her family. Further, the trial court found that when Haley became eligible to receive Social Security benefits, Fisher wanted her to continue her full-time work for the corporation, and to evade the wage cap, agreed to lower Haley's official salary from the corporation and issue payroll checks in the name of Haley's daughter to make up the difference.

The trial court was presented with conflicting evidence on the issue of Fisher's knowledge of Haley's actions. Each of the trial court's findings was supported by the evidence in the record and without reweighing the evidence or judging the credibility of the witnesses, we find that it was reasonable for the trial court to infer from the evidence that Fisher in fact knew or should have known of Haley's actions. Therefore, the trial court's conclusion that Fisher had knowledge of the transactions and is estopped from asserting a claim based upon those transactions was not clearly erroneous.

## III.

Finally, we address the Estate's cross-claim that the trial court erred in denying its request for attorney fees against Fisher.[1] At the close of evidence, the Estate presented a petition for assessment of attorney fees pursuant to Indiana Code section 34–1–32–1(b), which provides for an award of attorney's fees to the prevailing party if it finds that the other party

> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

The trial court denied this request, and the Estate appeals this denial.

The Estate is the losing party on the issue of attorney fees, and therefore is appealing from a negative judgment. We have previously stated the appropriate standard of review of an appeal from a negative judgment. *See* section II, *supra.* The Estate asserts that because the trial court had ruled Fisher to be an incompetent witness approximately seven months prior to the hearing on his claim, "Fisher had ample opportunity to dismiss his claim." Brief of Appellee at 25. We take this to be an assertion that Fisher continued to litigate his claim after it became apparent from the trial court's ruling that the claim was "frivolous, unreasonable or groundless."

■■■■■ For purposes of awarding attorney fees pursuant to Indiana Code section 34–1–32–1, a claim is "frivolous" if it is made primarily to harass or maliciously injure another, if counsel is unable to make a good faith and rational argument on the merits of the claim, or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. *St. Mary Medical Ctr. v. Baker,* 611 N.E.2d 135, 137 (Ind.Ct.App. 1993). A claim is "unreasonable" if, based upon the totality of the circumstances, in-

cluding the law and facts known at the time of filing the claim, no reasonable attorney would consider the claim justified or worthy of litigation. *Tipton v. Roerig, a Div. of Pfizer Pharmaceuticals,* 581 N.E.2d 1279, 1284 (Ind.Ct.App.1991). A claim is "groundless" if no facts exist which support the legal claim relied upon and presented by the losing party. *Id.* Finally, a claim is litigated in "bad faith" if the party presenting the claim is affirmatively operating with furtive design or ill will. *Figg v. Bryan Rental Inc.,* 646 N.E.2d 69, 76 (Ind.Ct.App.1995).

■■■ Despite the fact that Fisher ultimately lost, we do not believe his claim to have been frivolous, unreasonable or groundless. All that became apparent after the trial court's ruling was that Fisher's claim would be harder to prove. At the hearing, Fisher introduced twenty-two exhibits into evidence, called three witnesses and took the stand himself to testify to matters the trial court would allow. Clearly, Fisher was not relying only on himself as a witness to prove his claim such that the trial court's ruling made continuing the litigation frivolous, unreasonable, groundless or in bad faith. The trial court's denial of the Estate's request for attorney fees was not clearly erroneous.

### CONCLUSION

The trial court did not abuse its discretion in ruling that the Dead Man's Statute rendered Fisher an incompetent witness to his claim against the Estate, and the trial court's conclusion that Fisher had actual or constructive knowledge of the subject of his claim prior to Haley's death was not clearly erroneous. The evidence supported the trial court's judgment against Fisher on his claim, and also supported the trial court's denial of the Estate's request for attorney fees. Accordingly, the judgment is affirmed.

SHARPNACK, C.J., and STATON, J., concur.

---

1. As we have affirmed the trial court's judgment against Fisher and for the Estate, we find it unnecessary to address the Estate's contention that the trial court erred in ruling that Fisher's claim was a claim on open account subject to a six-year statute of limitations.