James C. BEDREE, Appellant–
Defendant,

v.

Mitchell BEDREE as Personal Repre-
sentative of the Estate of Emily Be-
dree, Deceased, Appellee–Plaintiff,

and

John Otto, Jr., Appellee–Defendant.

No. 02A03–0102–CV–47.

Court of Appeals of Indiana.

May 31, 2001.

Nathan S.J. Williams, Shambaugh, Kast, Beck & Williams, LLP, Fort Wayne, IN, Attorney for Appellant.

Eric E. Snouffer, Snouffer & Snouffer, Fort Wayne, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

James C. Bedree, brother of Emily Bedree, deceased, appeals from the trial court's order declaring two quitclaim deeds conveying property from Emily to James null and void. We affirm.

*Issues*

James raises three issues for our review, which we restate as follows:

1. Whether the trial court properly excluded his testimony as a violation of Indiana's "Dead Man's Statute," Indiana Code sections 34–45–2–4 and –5;

2. Whether the trial court properly excluded the testimony of John Otto, Jr. after he invoked his Fifth Amendment right against self-incrimination; and

3. Whether the trial court properly determined that Emily's signatures on the

two deeds in question were forgeries, rendering the deeds null and void.

## Facts and Procedural History

Emily Bedree died intestate on June 27, 1999. Her heirs consist of her brothers, George and James, and the two children of a brother who predeceased her. On August 10, 1999, James recorded two deeds, executed January 27, 1999, purporting to convey property from Emily to James. The deeds were notarized by John Otto, Jr. On December 18, 1999, George, as the personal representative of Emily's estate, filed a complaint seeking to have the deeds set aside and alleging that "[t]he purported signature of the decedent, Emily Bedree, on the two ... deeds is not the signature of Emily Bedree." R. 15. Both James and Otto were named as defendants. Thereafter, one of Emily's nephews, Mitchell Bedree, succeeded George as the personal representative and was substituted as plaintiff.

Mitchell filed a pre-trial motion to have James' testimony declared incompetent pursuant to the Dead Man's Statute. Neither defendant responded to this motion, and the trial court entered an order preliminarily finding that "James Bedree should not be allowed to testify to any matter which occurred during the lifetime of the decedent, Emily Bedree, unless the Court, in its sole discretion, requires his examination...." R. 247–48.

A bench trial was held on October 6, 2000. An expert for the Estate testified that, based upon his comparison of the two deeds in question with eight documents which by stipulation bore the authentic signature of Emily, the signatures on the deeds were forgeries. The Estate also called Otto as a witness, but upon taking the stand, he asserted his Fifth Amendment right against self-incrimination. Otto was excused from testifying without objection by James.

James called himself as a witness, but the Estate objected pursuant to the court's pre-trial order finding him incompetent to testify. The trial court sustained the objection and excluded James as a witness. The trial court did not allow James to make an offer of proof regarding his testimony. James then called George as a witness, who testified that, in his opinion, the signatures on the deeds were the authentic signatures of Emily.

The trial court ruled from the bench that "the evidence really is quite convincing here that the documents were forged." R. 327. Thereafter, the trial court issued an order specifically finding that the signatures were forgeries, declaring the deeds null and void, and ordering that the property described therein revert to the Estate. James now appeals.

## Discussion and Decision

### I. Dead Man's Statute

James contends that the trial court erred in excluding his testimony pursuant to the Dead Man's Statute.

#### A. Standard of Review

■ A trial court's ruling on witness competency will be reversed only for an abuse of discretion. *Johnson v. Estate of Rayburn*, 587 N.E.2d 182, 184 (Ind.Ct. App.1992). An abuse of discretion will be found when the ruling of the trial court is against the logic and effect of the facts and circumstances before the court. *Id.*

#### B. Exclusion of James' Testimony

Prior to the trial of this matter, the Estate filed a motion seeking to have James declared an incompetent witness pursuant to the Dead Man's Statute. Because James did not file a response to that motion, the trial court preliminarily granted the motion. At trial, James was called

as a witness, and the Estate objected based upon the trial court's preliminary ruling. The court again ruled that James was incompetent to testify, relying on Indiana Code sections 34–45–2–4 and 34–45–2–5. James requested that he be allowed to make an offer of proof, and the Estate objected. The trial court sustained the objection and disallowed the offer of proof.

The sections of the Dead Man's Statute upon which the trial court relied in making its ruling regarding James' testimony read as follows:

(a) This section applies to suits or proceedings:

(1) in which an executor or administrator is a party;

(2) involving matters that occurred during the lifetime of the decedent; and

(3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.

(b) Except as provided in subsection (c), a person:

(1) who is a necessary party to the issue or record; and

(2) whose interest is adverse to the estate;

is not a competent witness as to matters against the estate.

Ind.Code § 34–45–2–4.

(a) This section applies to suits by or against heirs or devisees founded on a contract with or demand against an ancestor:

(1) to obtain title to or possession of property, real or personal, of, or in right of, the ancestor; or

(2) to affect property described in subdivision (1) in any manner.

(b) Neither party to a suit described in subsection (a) is a competent witness as to any matter that occurred before the death of the ancestor.

Ind.Code § 34–45–2–5.

The general purpose of the Dead Man's Statute is to protect a decedent's estate from spurious claims. *Fisher v. Estate of Haley*, 695 N.E.2d 1022, 1026 (Ind.Ct.App.1998). Rather than excluding evidence, the statute prevents a particular class of witnesses from testifying as to claims against the estate. *Id.* at 1027. "The application of the statute is limited to circumstances in which the decedent, if alive, could have refuted the testimony of the surviving party." *Johnson*, 587 N.E.2d at 185.

James contends that the trial court erred in relying on the Dead Man's Statute because, without allowing an offer of proof, the trial court could not know whether the substance of the testimony James would be offering was, in fact, precluded by the Dead Man's Statute. In support of this contention, James cites *Johnson* for the proposition that the Dead Man's Statute applies only where the claimant is prepared to testify as to matters or transactions concerning the decedent, and not merely as to matters that occurred while the decedent was alive. *Id.*

Older case law suggests that when the objection "is to the right of the witness to testify at all, the party introducing that witness need not state what he expects to prove by him, as the question for the court to pass upon in such a case is not as to the competency of his testimony, but as to the competency of the witness himself." *Sullivan v. Sullivan*, 6 Ind.App. 65, 32 N.E. 1132, 1133 (1893); *see also Paullus v. Yarnelle*, 633 N.E.2d 304, 308 (Ind.Ct.App. 1994), *trans. denied; Senff v. Estate of Levi*, 515 N.E.2d 556, 559 (Ind.Ct.App. 1987), *trans. denied; Satterthwaite v.*

**1196**

*Satterthwaite's Estate,* 420 N.E.2d 287, 292 (Ind.Ct.App.1981). However, more recent case law has held that an offer of proof is required even when the trial court has found a witness incompetent or when it has otherwise prevented a witness from giving any testimony. *See Wiseheart v. State,* 491 N.E.2d 985, 991 (Ind.1986). In *Donaldson v. Indianapolis Pub. Transp. Corp.,* 632 N.E.2d 1167 (Ind.Ct.App.1994), the trial court excluded the testimony of a purported expert witness after determining that the witness did not qualify as an expert. Upon appeal, Donaldson contended that the trial court committed error when it precluded the witness from testifying. There, the court noted:

> During direct examination, when the trial court rules that a witness may not testify, the proponent of the excluded testimony must make an offer of proof to preserve the ruling for appellate review. "An offer of proof provides the appellate court with the scope and effect of the area of inquiry and the proposed answers, in order that it may consider whether the trial court's ruling excluding the evidence was proper."

*Id.* at 1170 (quoting *Tyson v. State,* 619 N.E.2d 276, 281 (Ind.Ct.App.1993), *trans. denied*). Thus, failure to make an offer of proof results in waiver of the evidentiary issue. *See State v. Snyder,* 732 N.E.2d 1240, 1246 (Ind.Ct.App.2000) ("The proponent of excluded evidence must make a formal offer of proof at trial or the error is waived and not preserved for appeal.").

■ Because an appellant may be subject to waiver if he fails to make an offer of proof, we believe that generally, the better course of action is for the trial court to allow an offer of proof so that a record can be made for this court on appeal. However, we do not believe the trial court committed reversible error in this particular instance by disallowing James' offer of proof. Indiana Evidence Rule 103 states that error may not be predicated upon a ruling excluding evidence unless a substantial right of the party is affected and an offer of proof was made *or* "the substance of the evidence ... was apparent from the context...." Ind.Evid.R. 103(a)(2). In this case, the only issue was whether or not the signature on the two deeds was in fact Emily's signature. Clearly, the only testimony James could give which would be relevant to resolution of this issue was for him to testify that Emily had indeed signed the deeds. Thus, the substance of the evidence James would be giving was apparent from the context of the case, and an offer of proof was not strictly necessary.

■ A witness is rendered incompetent under the Dead Man's Statute when the following requirements are met: a) the action is one in which the administrator or executor is a party; b) the action involves matters which occurred within and during the lifetime of the decedent; c) a judgment may be made or rendered for or against the estate represented by such administrator or executor; d) the witness is a necessary party to the issue; and e) the witness is adverse to the estate and testifies against the estate. *Johnson,* 587 N.E.2d at 184; Ind.Code § 34–45–2–4. This is a case in which George, and later Mitchell, acting as the personal representative of Emily's estate, was a party, the action involves a conveyance of property which purportedly occurred during Emily's lifetime, a judgment could be rendered for the Estate if the signatures were found to have been forged, James was a necessary witness to the issue as the proponent of the deeds, and James' interest was adverse to the Estate's. Thus, all of the requirements for exclusion of James as a witness by the Dead Man's Statute were met. The

trial court committed no error in excluding his testimony.

## II. Self–Incriminating Testimony

■ James also contends that the trial court erred in concluding that Otto need not testify once he invoked his right against self-incrimination. The appellees respond that any error in excluding Otto's testimony was waived. We must agree with the appellees.

At trial, the Estate called Otto as a witness during its case-in-chief. Otto took the stand and was sworn in, but his attorney informed the court that Otto was asserting his Fifth Amendment right not to incriminate himself and made a brief argument in support of that assertion. The Estate affirmatively stated for the record that it had no response. James was silent. The court then stated that "if I don't have any more information than that, I think I have to rule that the Fifth Amendment does apply in this case." R. 304. The court ruled that Otto was not required to testify and excused him as a witness. James did not object to this ruling, nor did he make an offer to prove that Otto's expected testimony would not be incriminating. Therefore, he has waived this issue for our review. *See Gouge v. Northern Indiana Commuter Transp. Dist.,* 670 N.E.2d 363, 368 (Ind.Ct.App.1996) ("[W]hen the trial court rules that a witness may not testify, the proponent of the excluded testimony must make an offer of proof to preserve the ruling for appellate review.").

## III. Trial Court's Judgment

James finally contends that the trial court erroneously concluded that the signatures on the deeds were forgeries and set aside the deeds.

### A. Standard of Review

■ No party to this action requested special findings of fact, and the trial court ruled from the bench. Therefore, James is appealing from a general judgment. A general judgment will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *Shelby Eng'g Co., Inc. v. Action Steel Supply, Inc.,* 707 N.E.2d 1026, 1027 (Ind.Ct. App.1999). In making this determination, we neither reweigh the evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id.* In reviewing a general judgment, we must presume that the trial court correctly followed the law. *Perdue Farms, Inc. v. Pryor,* 683 N.E.2d 239, 240 (Ind.1997).

### B. Authenticity of Signatures

■ The trial court ruled that the signatures on the two deeds at issue in this case were forgeries, that the two deeds were null and void, and that the property purportedly conveyed to James by those deeds should revert to the ownership of the Estate. At the trial of this matter, the Estate presented the testimony of Douglas Buck, a "forensic document examiner." Buck had examined several documents which the parties had stipulated contained the authentic signature of Emily, including several checks which had been signed by her in the last half of 1998 and two vehicle registrations signed by her in the first two months of 1999. Buck had also examined the deeds at issue which were purportedly signed in January 1999. In Buck's opinion, the signatures on the deeds were forgeries. Buck explained the method by which he made that determination, and believed his determination to be one hundred percent accurate. James presented the testimony of George Bedree, Emily's

brother, who testified that he was familiar with Emily's signature and believed the signatures on the deeds to be hers.

There is evidence in the record, namely the testimony of Douglas Buck, which supports the trial court's conclusion. The fact that George presented conflicting testimony was a matter for the trial court to resolve. Because we can neither reweigh the evidence nor judge the credibility of the witnesses, we must affirm the trial court's decision.

### Conclusion

The trial court did not err in excluding James' testimony pursuant to the Dead Man's Statute even without allowing James to make an offer of proof. Moreover, James has waived the issue of the exclusion of John Otto's testimony for our review by failing to make an objection to his exclusion during trial. Finally, there is evidence in the record supporting the trial court's conclusion that the signatures on the deeds at issue were forged. Accordingly, the trial court's order declaring the deeds to be null and void and ordering that the property revert back to ownership of the Estate is affirmed.

Affirmed.

VAIDIK, J., and BROOK, J., concur.