Carlos R. GARCIA, Appellant–Defendant,

v.

Anita G. GARCIA, Appellee–Plaintiff.

No. 65A04–0207–CV–356.

Court of Appeals of Indiana.

June 10, 2003.

David W. Kent, Keating, Bumb, Vowels, Laplante & Kent PC, Evansville, IN, Attorney for Appellant.

Beth Ann Foltz, Mount Vernon, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Carlos R. Garcia ("Father") appeals the trial court's judgment awarding child support arrearages to his daughter arising from Anita G. Garcia's ("Mother") complaint against him for contempt and for declaratory judgment. He presents four issues for our review, which we consolidate and restate as:

I. Whether the trial court's judgment erroneously included child support arrearages that accrued outside the applicable statute of limitations.

II. Whether the trial court's decision is clearly against the logic based upon expert testimony regarding a receipt purportedly signed by Mother showing payment of child support.

III. Whether the trial court abused its discretion in awarding interest on the child support arrearage at the rate of 1 1/2% per month.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

The parties divorced on November 20, 1978, at which time Father was ordered to pay $35.00 per week in child support for Carrie, the only daughter of the marriage. The trial court granted Mother custody of the child. The child support docket from the Posey County Clerk's Office shows Father made the following payments: $210.00 in 1978, $1,820.00 in 1979, $980.00 in 1980, and $635.00 in 1982. On September 12, 1998, Carrie married and thus became emancipated.

On October 2, 2001, Mother filed an Information for Contempt against Father for his failure to pay child support. Mother subsequently amended the claim to add a complaint for declaratory judgment and also filed a motion to join Carrie as a

party. The trial court held a hearing on February 25, 2002. Father claimed he made child support payments directly to Mother until Carrie turned eighteen. Mother denied receiving any child support other than that received from the clerk's office. Besides the records from the clerk's office, Father was unable to produce any evidence supporting his claim that he paid child support. Father did however produce a receipt dated May 23, 1996 purportedly signed by Mother, which read:

> I, Anita Garcia, received from Carlos Garcia the sum of $116.65 for 3 weeks child support for the month of June. With this amount, Carlos has paid all of his child support obligations in full, since our daughter Carrie will turn 18 years of age on June 22, 1996.

*Exhibit Transcript* at Father's Exhibit B. Handwriting experts disputed the validity of Mother's signature. The parties did agree that Father purchased Carrie a car, valued at approximately $15,000, for a high school graduation gift.

The trial court entered its Decree[1] on May 30, 2002, granting judgment against Father in the amount of $194,541.03 plus interest on the unpaid balance as of the date of the order. Father appeals.

## DISCUSSION AND DECISION

Father first argues that the trial court erroneously applied the statute of limitations when calculating the child support arrearage. He claims that a portion of the arrearage accrued outside the applicable statute of limitations. To support his argument, Father relies upon *Connell v. Welty*, 725 N.E.2d 502 (Ind.Ct.App.2000).

In *Connell*, the father was ordered to pay $32,618.00 in child support arrearage.

On appeal, he argued that the general statute of limitations, IC 34–11–1–2, applied and barred any recovery. The statute provides that a cause of action arising prior to September 1, 1982 and not limited by another statute must be brought within fifteen years, and a cause of action arising on or after that date must be brought within ten years. Connell further argued that the statute of limitations on child support obligations, IC 34–11–2–10, was inapplicable because the statute did not go into effect until July 1, 1998, well beyond the December 5, 1991 date of emancipation of his two children as determined by the trial court. Our analysis on appeal was as follows:

> We observe initially that I.C. § 34–11–2–10 is a recodification of I.C. § 34–1–2–1.6, which was enacted and given emergency effect on May 8, 1995. Furthermore, we note the general rule with respect to statutes of limitation: "the period of limitation in effect at the time the suit is brought governs in an action even though it may lengthen or shorten an earlier period of limitation." *State v. Hensley*, 661 N.E.2d 1246, 1249 (Ind.Ct. App.1996) ("First Rule"). However, a new statute of limitations cannot revive a claim which was foregone under the prior statute of limitations before passage of the new one. *See Indiana Dept. of State Revenue, Inheritance Tax Div. v. Puett's Estate*, 435 N.E.2d 298, 301 (Ind.Ct.App.1982) ("[I]f the plaintiff's suit was barred by the running of a statute of limitations prior to the extension of the limitations period, the subsequent statute cannot revive the defendant's liability") ("Second Rule").
>
> We agree with Connell that, prior to the enactment of I.C. § 34–1–2–1.6 (now I.C. § 34–11–2–10), the relevant statute

---

**1.** We commend the trial court on the thoroughness and completeness of its written order, which greatly facilitated appellate review.

of limitations was I.C. § 34–11–1–2, which allows a plaintiff to bring claims arising after September 1, 1982 and not limited by any other statute within 10 years of the date it arises. We note in addition that the limitations period for collecting delinquent child support begins to run on each installment of child support as it becomes due and unpaid. *Haton v. Haton,* 672 N.E.2d 962, 963–63 (Ind.Ct.App.1996), *trans. denied.*

In this instance, we find when we apply the First Rule that the appropriate statute of limitations, at the time Welty brought her action, was I.C. § 34–11–2–10. Under this statute, she was permitted ten years from the time of her daughter's eighteenth birthdays, as we have found that neither daughter was emancipated before her eighteenth birthday. Welty brought her action when her daughters were twenty-five and twenty-six years old, and Connell acknowledges this fact. Thus, Welty meets the requirement of bringing her action within ten years of her children's eighteenth birthdays.

In applying the Second Rule, we note that Welty charged arrearages from as early as 1981. Prior to I.C. § 34–1–2–1.6 going into effect on May 8, 1995, the statute of limitations governing her claims for child support arrearages was I.C. § 34–11–1–2, which would have barred all claims more than ten years old, that is, all claims prior to May 8, 1985. Thus, Welty may only bring a cause of action concerning those delinquent payments for which the statute of limitations had not already run prior to the enactment [of] I.C. § 34–1–2–1.6. Welty may therefore bring claims for payments due after May 7, 1985 up to

the date of the last payment due, ending December 5, 1991.

*Id.* at 506.

 We agree with Father that *Connell* is applicable here and that the trial court erred when it included in its arrearage calculation delinquent child support for which the applicable statute of limitations had expired. Because Mother filed her information for contempt on October 2, 2001 and Carrie turned eighteen on June 22, 1996, under the "First Rule" articulated in *Connell,* the action was timely filed. Applying the "Second Rule," however, we find that the trial court erred in determining the amount of arrearage owed because it went back past May 1985 in its calculation. In its order, the trial court noted that Father accumulated an arrearage of $980.00 in 1980, $1,820.00 in 1981, $1,185.00 in 1982, and $1,820.00 for each of the years 1983 through 1985 (total amount of $9,445.00). Following *Connell,* the trial court should have begun its calculation in May 1985 and ended its calculation on September 12, 1998—the date of Carrie's emancipation. The case is therefore remanded to the trial court to determine a proper calculation consistent with the "Second Rule" articulated in *Connell.*[2]

 Father next maintains that the trial court erred by disregarding his handwriting expert's testimony that the receipt purportedly signed by Mother was valid. He argues that he made child support payments directly to Mother until Carrie turned eighteen, that the trial court should have found that he did make these payments, and accordingly that he should have been credited for the payments.

---

**2.** Father further argues that the two-year statute of limitations for a person under a legal disability contained in IC 34–11–6–1 is applicable to entirely bar the action. We disagree and note that a more specific statute has been enacted which applies to actions to enforce child support obligations. *See* IC 34–11–2–10.

Here, the evidence regarding the validity of the receipt was conflicting. While Father's handwriting expert testified that in his opinion the signature on the receipt was Mother's, he could not testify to the authenticity of the receipt itself because it was a photocopy. Mother testified that she did not execute the receipt and that she did not have access to a computer or typewriter to provide the typewritten receipt to Father in 1996. Further, Mother's expert testified that the signature on the receipt was not Mother's.

■ It was for the trial court to resolve conflicting evidence, and on appeal we may not reweigh evidence nor reassess witness credibility. *Bedree v. Bedree,* 747 N.E.2d 1192, 1198 (Ind.Ct.App.2001), *trans. denied.* Here, the conflicting evidence concerning the handwriting comparison goes to the weight and credibility of the evidence, which is solely the province of the trial court. Moreover, having considered the evidence from the perspective most favorable to the judgment, we conclude that there is ample evidence in the record before us on appeal that supports the trial court's determination. Given our standard of review, we defer to the discretion of the trial court concerning the credibility determination and find no error.

■ Father finally argues that the trial court erred by determining that the support arrearage accrued interest at the rate of 1 1/2% per month, which amounts to the unfair rate of 18% per annum, rather than exercising its discretion to use the declaratory judgment 8% per annum interest rate. Father claims that the trial court abused its discretion in awarding interest. We agree.

Here, the trial court noted that the interest computation was "problematic." *Appellant's Appendix* at 18. It specifically stated:

A Declaratory Judgment should call for interest of 8% per annum on the unpaid balance while support arrearages accrue 1 1/2% per month on the unpaid balance . . . .

Interest at 8% per annum results in a total of $72,823.78 plus 8% per annum from the date of this Decree.

Interest at the 1 1/2% per month per annum rate on the arrearage of $28,859.00 ($32,620.00 minus credits of $3,761.00) results in a total of $194,541.03 a 600% penalty, plus 8% per annum from the date of this Decree. It is for the Legislature to remedy such inequities, perhaps, by eliminating the special support interest statute and leaving the regular interest rates to apply to all judgments.

*Appellant's Appendix* at 19. The trial court correctly cited the interest rates called for by the applicable statutes. However, it failed to note that the child support statute provides the trial court with discretion to award the 1 1/2% rate per month. IC 31–16–12–2 states: "The court **may,** upon a request by the person or agency entitled to receive child support payments, order interest charges of not more than one and one-half percent (1 1/2%) per month to be paid on any delinquent child support payment." (emphasis added). Here, the trial court did not acknowledge its ability to exercise discretion in this situation, and, in fact, did not exercise discretion in awarding an equitable interest rate that does not penalize Father. We find that the 600% penalty would be an abuse of discretion if discretion had been exercised and, therefore, remand the case to the trial court for entry of an order determining the interest rate to be 8% per annum and for a proper computation of prejudgment interest owed.

We reverse and remand with instructions to properly determine the amount of

arrearage owed following the holding of *Connell* and for an entry awarding pre-judgment interest to this amount at a rate of 8% per annum. In all other respects, we affirm the trial court's decree.

Affirmed in part, reversed in part, and remanded.

SULLIVAN, J., and SHARPNACK, J., concur.