Patrick R. TAYLOR, Appellant,

v.

Josephine TAYLOR, Ronald R. Taylor, Bank One, Crawfordsville, NA, Personal Representative of the Estate of John Robert Taylor, deceased, and The Estate of John Robert Taylor, Deceased, Appellees.

No. 32S04–9411–CV–1124.

Supreme Court of Indiana.

Nov. 28, 1994.

James L. Lowry, Kendall Wood Lowry & Kessinger, Danville, Alan D. Hutchinson, Parr Richey Obremskey & Morton, Lebanon, for appellant.

Terry E. Harris, Young Harris & Harvey, Crawfordsville, Frank N. Howard, Crawfordsville, for appellees.

## ON PETITION TO TRANSFER

DeBRULER, Justice.

This case comes to us on petition to transfer. *Taylor v. Taylor* (1994), Ind.App., 632 N.E.2d 808. Ind.Appellate Rule 11(B). Appellant Patrick Taylor challenges a judgment determining heirship. We grant transfer in order to address the following issues:

1) whether the incompetency of a witness under Indiana Code § 34-1-14-6 to -7, the so-called "Dead Man's" statute, is waived by a party when the party employs that witness's deposition in support of a motion for summary judgment;

2) whether the trial court erred in granting partial summary judgment that there was no oral prenuptial agreement; and

3) whether an alleged violation of the attorney-client privilege provides sufficient grounds for excluding testimony at trial.

Appellee Josephine married the decedent, Robert Taylor, on December 31, 1986. At that time decedent's will left his estate to his former wife, Jean, who predeceased him. The will also provided that if Jean died before Robert, then his estate would pass to his sons, Patrick and Appellee Ronald. Before marrying, Josephine and Robert had discussed what provisions would be made for her in the event of his death.

In May, 1988, Josephine sought legal advice about her bankruptcy from Patrick, a practicing attorney. As part of that bankruptcy, Patrick prepared several documents for Josephine to sign, including a waiver of right to elect against Robert's will. Patrick filed the bankruptcy documents on May 19, 1988.

In June 1988, Robert and Josephine met with attorney Herman Greenwood, in order to write a new will for Robert. Greenwood subsequently drafted the new will, which included provisions for Josephine, but that will was never executed. Robert died on April 23, 1990. Appellee Bank One, as personal representative of the estate, admitted the

first will to probate on May 18, 1990. Patrick filed the waiver with the trial court. Josephine filed a petition of surviving spouse for statutory allowance and an election to take against the will. Bank One filed a petition to determine heirship on October 1, 1990. Either the Estate or Patrick seems to have tried to prevent Josephine from electing to take against the will, based on an alleged prenuptial agreement.

Josephine filed a motion for partial summary judgment on July 23, 1991, arguing that no issue of material fact existed as to the existence of a prenuptial agreement between her and the decedent. The trial court granted the motion, finding that no such agreement existed. The Court of Appeals refused to hear Patrick's interlocutory appeal of the trial court's order granting partial summary judgment. Ind.Appellate Rule 4(B)(6).

The trial court heard evidence on the remaining issues and found that Josephine had not waived her right to elect to take against the will. The court ordered that she receive the $8,500 statutory survivor's allowance and the statutory intestate share of the estate for a subsequent childless spouse. Ind.Code § 29–1–4–1 (Burns 1989).

Patrick appealed and the Court of Appeals affirmed the trial court. *Taylor v. Taylor* (1994), Ind.App., 632 N.E.2d 808. It found that the trial court properly granted summary judgment on the issue of the prenuptial agreement because an oral prenuptial agreement is not enforceable. The Court of Appeals also decided that a deposition used for summary judgment purposes does not waive the incompetency of a witness to testify based on the Dead Man's statute. Ind.Code 34–1–14–6 and –7 (Burns 1986).

## I

Patrick claims that Josephine waived the application of the Dead Man's statute by filing a witness's deposition with the trial court when that witness would have been incompetent under the statute.[1]

■ The position held by this Court is that the mere taking of a deposition does not waive the applicability of the Dead Man's statute. *Plummer v. Ulsh* (1967), 248 Ind. 462, 229 N.E.2d 799. *But see Duling v. Markun* 231 F.2d 833 (7th Cir.1956) (taking of deposition of party otherwise incompetent is waiver of objection to testimony of person at trial). We add that requesting an admission does not constitute a waiver of the incompetency of the witness receiving that request, i.e. a party may request admissions from an opposing party and still raise the incompetency objection if that party attempts to testify at trial. Discovery, as its name suggests, exists in order for parties to explore and investigate. It is for this reason that the discovery rules explicitly allow the discovery of inadmissible information. Ind.Trial Rule 26(B). Treating material discovered as a waiver of protections such as the Dead Man's statute would inhibit, not facilitate, the acquisition of information that might lead to admissible evidence.

However, at the point when a party employs a witness's deposition and/or admissions in court, the party is in fact using the information discovered for an evidentiary purpose. The party is treating, and hopes that the court will treat, the discovered information as establishing some relevant fact about the case. In such circumstances, if the deposition testimony concerns matters within the scope of the Dead Man's statute, then the party who offered the deposition testimony into evidence would have waived the incompetency of the witness, because that party has relinquished the benefit bestowed by the statute.

■ The Dead Man's statute contains the following relevant provisions:

---

1. The Court of Appeals discussed this issue in light of its decision in *Dodd v. Estate of Yanan* (1992), Ind.App., 587 N.E.2d 1348, *transfer granted* (1993), Ind., 625 N.E.2d 456. We strongly disapprove of such an approach. No amount of "clarification" or "extension" can breathe new life into an Indiana Court of Appeals decision once the Supreme Court of Indiana grants transfer. *See* App.R. 11(B)(3) ("If transfer be granted, the judgment and opinion or memorandum decision of the Court of Appeals shall thereupon be vacated and held for naught, except as to any portion thereof which is expressly adopted and incorporated by reference … [or] summarily affirmed by the Supreme Court.").

In suits or proceedings where an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such matters against such estate.... Ind.Code § 34-1-14-6 (Burns 1986).

In all suits by or against heirs or devisees, founded on a contract with or demand against the ancestor, to obtain title to, or possession of property, real or personal, of, or in right of, such ancestor, or to affect the same in any manner, neither party to such suit shall be a competent witness as to any matter which occurred prior to the death of the ancestor. Ind.Code § 34-1-14-7 (Burns 1986).

The central purpose of the Dead Man's statute is to ensure that when one party to a transaction has had her lips sealed by death the other party's lips are sealed by law, *Johnson v. Estate of Rayburn* (1992), Ind. App., 587 N.E.2d 182. *See also In re Sutherland's Estate* (1965), 246 Ind. 234, 204 N.E.2d 520.

■ "[T]he dead man's statute applies only where the *claimant* is prepared to testify as to matters or transactions concerning the decedent, and not merely as to matters that occurred while the decedent was alive...." *Id.* at 185 (emphasis added). Since a judgment "against the estate" could result and an alleged "contract with" the decedent is involved, Josephine's election, or waiver of right to elect, to take against the will would ordinarily have rendered her testimony incompetent. However, any exclusion that might have been available under the Dead Man's statute has been waived by the use of the depositions in support of the motion for summary judgment and the trial court erred in excluding the testimony of Josephine, Patrick, and Robert R. Taylor. Mary Dawn Taylor's testimony is also admissible, assuming that its exclusion was based solely on the incompetence of her husband, Robert.[2]

## II

Patrick claims that the trial court erred in granting partial summary judgment that an oral prenuptial agreement was unenforceable under the doctrine of partial performance.

■ Patrick correctly points out that prenuptial agreements are favored by the law, even when not memorialized in writing until after the marriage has occurred. *Beatty v. Beatty* (1990), Ind.App., 555 N.E.2d 184. This favor results from a desire by the courts to facilitate efficient property settlement when a marriage terminates through death or divorce. A prenuptial agreement can be invaluable to a judge attempting to determine the parties understanding of the obligations of their marital relationship. *See In re Marriage of Boren* (1985), Ind., 475 N.E.2d 690.

Prenuptial or antenuptial agreements are nothing more than a complicated species of contract, i.e. an enforceable promise. In analyzing contractual claims we must first determine that there was in fact a promise. Since a promise is the common element in all contracts, if there is no promise then there exists no contract.

■ Apparently, prior to their marriage, the decedent and Josephine discussed his obligations to her. However, the issue here is whether any agreement extended to the waiver of the right to elect to take against the will. The statute is very explicit on this subject:

When a married individual dies testate as to any part of the individual's estate, the surviving spouse is entitled to take against the will.... [I]f the surviving spouse is a second or other subsequent spouse who did not at any time have children by the decedent and the decedent left surviving a child or children or the descendants of a child or children by a previous spouse, the surviving second or subsequent childless spouse shall upon such election take one third (⅓)

2. "When the husband or wife is a party, and not a competent witness in his or her own behalf, the other shall also be excluded." Ind.Code § 34-1-14-9 (Burns 1986).

of the net personal estate of the testator plus a life estate in one third (⅓) of the lands of the testator.... Ind.Code § 29–1–3–1(a) (Burns 1989).

(a) The right of election of a surviving spouse given under [Indiana Code § 29–1–3–1] of this chapter may be waived before or after marriage by a written contract, [or] agreement signed by the party waiving the right of election, after full disclosure of the nature and extent of such right, if the thing or the promise given such party is a fair consideration under all the circumstances.

(b) The promise of marriage, in the absence of fraud, is sufficient consideration in the case of an agreement made before marriage.... Ind.Code § 29–1–3–7 (Burns 1989)

Patrick claims that the waiver of the right to elect to take against the will signed by Josephine was partial performance of the oral prenuptial agreement between her and the decedent *and* a memorialization of that agreement; Josephine claims that it was one of many documents that she signed in preparing to file for bankruptcy. That waiver is as follows:

### WAIVER OF RIGHT TO TAKE AGAINST WILL

Comes now Josephine Taylor, and now waives her right to take against the will of her husband, John Robert Taylor.

Josephine Taylor has been advised that but for the instrument she could take against the will of John Robert Taylor and is aware that one now exists that does not provide for her.

That in the event of John Robert Taylor makes [sic] other wills, the waiver will continue in force.

/s/_____

Since decedent was not even present and there is no mention in it of the negotiations that allegedly occurred prior to the marriage, it is unclear how this writing could be a memorialization of the prenuptial agreement. Of course, the waiver document is admissible at trial, not as evidence of a prenuptial agreement, nor as evidence of partial performance of a prenuptial agreement, but as evidence of Josephine's waiver of right to take against the will. Under our decision today the trier of fact may still decide that it is inadequate to establish such waiver, e.g., the trier of fact might determine that the disclosure failed to satisfy the statute.

However, Patrick's general position is untenable. One cannot simultaneously rely on the written waiver of the right to elect to take against the will as both a memorialization of the entire oral prenuptial agreement and partial performance thereof. His reliance on Josephine's statement in her deposition that there had been a prenuptial agreement is misplaced. A layperson's claim that some legal requirement has been satisfied cannot be given significant evidentiary weight.[3] Josephine is not an attorney with experience in the law of contracts and therefore her alleged admission tells us nothing about the existence of an enforceable prenuptial agreement.[4] Since there is no evidence of an actual prenuptial agreement, the trial court was not in error in granting partial summary judgment.

### III

Patrick argues that he should have been permitted to testify even if such testimony violates the attorney-client privilege.

Patrick wished to offer testimony regarding the work that he performed for Josephine while retained as her lawyer. Josephine objected because he would be revealing information that she only provided because of

---

3. The importance of this rule is clearest in the criminal context. Should a court give weight to the testimony of a layperson who says "At that time the defendant did not satisfy the mens rea required for a violation of the child molestation statute."? To ask the question is to answer it.

4. Decedent's meeting with attorney Greenwood in order to draft a new will that included Josephine would seem to indicate that a waiver of right to elect to take against the will was not a part of any prenuptial agreement between Josephine and the decedent. This provides support for the trial court's determination that there was no prenuptial agreement.

their attorney-client relationship. Ind.Professional Conduct Rule 1.6.

Initially, it is worth noting that the exceptions contained within Prof.Cond.R. 1.6 may actually permit such testimony without any violation of an attorney's obligations to his client. The rule states, "A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation ... except ... to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client...." Prof.Cond.R. 1.6. In spite of the fact that this exception is directed at attorney-client disputes concerning the representation, it *might* allow an attorney to offer such testimony without subjecting him or her to discipline.

■ In any event, the attorney-client privilege, recognized at common law, is now protected by a statute that makes the attorney incompetent as a witnesses about confidential communications with clients.[5] The court may accept the testimony of the lawyer as to confidential communications if the client consents to such revelations. *Penn Mut. Life Ins. Co. v. Wiler* (1885), 100 Ind. 92. This privilege is personal to the client and may be waived or exercised by her alone. *Key v. State* (1956), 235 Ind. 172, 175, 132 N.E.2d 143, 145. However, like most privileges, the attorney-client privilege may be waived. This Court has held that the client may waive the privilege by testifying at trial concerning the content of conversations between herself and counsel. *Id.* In light of our discussion in § I above, we hold that when a client testifies as to the content of attorney-client communications in her deposition and then submits that deposition to the trial court for an evidentiary purpose, e.g., in support of a motion for partial summary judgment, then she has waived the attorney-client privilege as to the content of those communications.

### Conclusion

Accordingly, we grant transfer and vacate the opinion of the Court of Appeals. The partial summary judgment is affirmed. The judgment determining heirship is reversed and the cause remanded to the trial court for a new trial limited to the question of whether there is a post-nuptial agreement to waive the right to take against the will made in conformity with the governing statute. Ind.Code § 29–1–3–6 (Burns 1989).

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I disagree with the majority opinion in its holding that the "exclusion that might have been available under the Dead Man's statute has been waived by the use of the depositions in support of the motion for summary judgment and the trial court erred in excluding the testimony of Josephine, Patrick, and Robert R. Taylor."

I believe the majority opinion of the Court of Appeals was correct in holding that the exclusion under the Dead Man's statute was not waived. I would further point out that I agree with Judge Sullivan's concurring opinion in which he states his disagreement with *Dodd v. Estate of Yanan* (1992), Ind.App., 587 N.E.2d 1348; notwithstanding this, he concurs with the majority in holding that Josephine did not waive the incompetency of the witness by resorting to Ind.Trial Rule 36.

I would affirm the trial court.

---

**5.** "The following persons shall not be competent witnesses: ... Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases." Ind.Code § 34–1–14–5 (Burns 1986).