The ESTATES OF Helen KALWITZ and Obed A. Kalwitz, Sr., Appellants,

v.

Obed A. KALWITZ, Jr., Rolene Kalwitz, Obed Kalwitz III, and Lorene Mohlke, Appellees.

No. 46A03–9903–CV–104.

Court of Appeals of Indiana.

Oct. 15, 1999.

 

Stephen A. Kray, LaPorte, Indiana, Attorney for Appellant.

Stephen Bower, Cohen & Thiros, Merrillville, Indiana, Attorney for Appellee.

**OPINION**

DARDEN, Judge

*STATEMENT OF THE CASE*

Sharon Grieger and Eugene Kalwitz, both individually and as coexecutors of the Estate of Obed Kalwitz, Sr. (deceased) and Grieger, as the executrix of the Estate of Helen Kalwitz, (deceased) (collectively; the Estates) filed this action against Obed Kalwitz, Jr., his wife, Rolene, and their children, Obed III and Lorene Mohlke (collectively, the Defendants) to quiet title and to impose a constructive trust on certain real property that Obed, Sr. and Helen allegedly conditionally transferred to their grandchildren, Obed III and Lorene.[1] After a hearing on cross-motions for summary judgment, a special judge entered an order granting summary judgment in favor of the Defendants. The Estates appeal.

We affirm in part, reverse in part and remand.

*ISSUES*

I. Whether the trial court erred by denying the Estates' summary judgment motion and by granting Defendants' cross-motion for summary judgment on the Estates' fraudulent conveyance claim.

II. Whether the trial court erred by denying the Estates' summary judgment motion and granting Defendants' cross-motion for summary judgment on the Estates' claim that the deeds were void because they were the products of the unauthorized practice of law.

III. Whether the trial court erred by denying the Estates' summary judgment motion and granting Defendants' cross-motion for summary judgment on the Estates' constructive fraud claim.

1. In their Brief, the Defendants represent to this court that "Sharon Grieger and Eugene Kalwitz have not sued...." Appellee's Brief, p. 20. However, the record clearly reveals that Sharon and Eugene, individually and as co-executors of Obed, Sr.'s Estate, filed this action against the Defendants. (R. 120). In the proceedings below, the Defendants recognized that Sharon and Eugene were parties to the lawsuit inasmuch as the Defendants sought summary judgment against them.

*FACTS*

In 1940, Obed, Sr. married Helen, and four children were born to the marriage: Obed, Jr., Eugene, Sharon, and Ted. Obed, Sr. and Helen raised their children in their home on a 312–acre farm in LaPorte County. By the late 1970's, Obed, Sr. and Helen had acquired approximately 290 acres of additional farm land in LaPorte County.

Although Obed, Sr. and Helen owned the property, they farmed it as a partnership with their children, sharing in the expenses and profits. Obed, Jr., the elder child, became the head of the Kalwitz' family farming operation and was responsible for the day-to-day operation of the farm when Obed, Sr. and Helen retired from active farming in 1978.

In 1979, Ted, the youngest of the children, died. That same year, Obed, Sr. and Helen executed mutual wills, in which 331 acres of their property—the 312–acre homestead plus nineteen additional acres—were to go to Sharon and Eugene following a life estate in the surviving spouse (parent). The remaining 270 acres were to go to Obed, Jr. and Eugene following a life estate in the surviving spouse.

In the early 1980's, Obed, Jr. asked his parents and his brother, Eugene, to co-sign on a loan so that he could purchase his own farm land. Obed, Sr., Helen, and Eugene agreed to co-sign for the loan and executed a promissory note in favor of LaPorte Production Credit Association (LPCA). To secure payment for the loan, Obed, Sr. and Helen executed a second mortgage on the 270 acres of their farmland as collateral. In 1985, LPCA filed a mortgage foreclosure action on the promissory note after Obed, Jr. and his wife, Rolene, failed to pay the note. The Kal-

witz family answered the complaint and filed a counterclaim, alleging lender fraud.

Subsequently, in November of 1986, while the LPCA litigation was still pending, Obed, Jr. persuaded Obed, Sr. and Helen to transfer title of their 312–acre homestead plus 19 additional acres of farmland to his children, 16–year–old Obed III and 21–year–old Lorene, to protect the property from a possible deficiency judgment in the foreclosure action. Obed, Jr.'s wife, Rolene, prepared the deeds to transfer title to the property. With the apparent thought of protecting their property from the pending litigation, and in reliance upon Obed, Jr.'s oral promise to reconvey the subject acreage back to them after the LPCA litigation concluded, Obed, Sr. and Helen signed the deeds conveying the property to their grandchildren without receiving any consideration in return. The weekend after Obed, Sr. and Helen deeded the property to their grandchildren, Obed, Jr. assured Sharon that the conveyance of the property "was just a protective measure in the event the [LPCA] lawsuit did go bad so at least our parents [have] a chance to keep their home." (R. 54).[2]

After the transfer, Obed, Sr. and Helen continued to reside on the 312–acre homestead and treat the property as their own. Obed Sr. died in 1989, and Helen and Eugene consulted their family attorney regarding opening Obed Sr.'s estate. They told the attorney about the 1986 deeds transferring title to the 331 acres to Obed III and Lorene. The family attorney informed Helen and Eugene that they might be able to sue Obed, Jr. and his children under a constructive trust theory to recover the property. Helen responded that there was no need to sue because Obed, Jr. was going to give the property back.

In April of 1995, Helen died. The day after Helen's funeral, Obed, Jr. informed

---

**2.** The designated materials reveal that shortly after the deeds were executed, Eugene and Sharon were informed that their parents had conveyed the farm land to Obed III and Lorene to protect the property from the family's ongoing litigation with LPCA. In his affida-

vit, Eugene stated that Obed, Jr. admitted that he had his parents transfer the property to their grandchildren to protect it from the family's pending lawsuit and had promised to return the property to them at the conclusion of the lawsuit.

Eugene and Sharon that he was not going to reconvey title to the 331 acres to the estates of his parents and ordered Eugene off the property.[3] On October 17, 1995, Helen's Estate filed a "Complaint for Return of 331 Acres" against the Defendants, seeking an order declaring a constructive trust on the property and to quiet title to the property in Helen's Estate or Helen's beneficiaries. The one-count complaint, which did not expressly identify any theory for the imposition of a constructive trust, alleged that Obed, Sr. and Helen deeded 331 acres to Obed III and Lorene at the request and instruction of Obed, Jr. and his wife, Rolene; that Obed, Jr. and Rolene occupied a position of trust and confidence with Obed, Sr. and Helen at the time of the transfer; that the transfer was made without consideration to protect the property from an adverse judgment in a pending lawsuit; that the transfer was made with the understanding and in reliance upon Obed, Jr. and Rolene's promise to return the property to them at the conclusion of the pending LPCA litigation; and that the Defendants' refusal to return the land was unreasonable, in bad faith, and an attempt to defraud the Estate.[4]

On November 9, 1995, the Defendants filed a motion to dismiss the complaint pursuant to Ind. Trial Rule 12(B)(6), and Helen's Estate responded with a motion for summary judgment, seeking the imposition of a constructive trust based upon a constructive fraud theory, though not expressly designated as such.[5] After conducting a hearing, the trial court denied both motions.

On July 10, 1996, Obed, Sr.'s Estate, Sharon, and Eugene filed a complaint against the Defendants which was nearly identical to the complaint filed by Helen's Estate. Defendants subsequently moved for summary judgment on the Estates' complaints, which they characterized as asserting a claim to declare the 1986 deeds invalid as conveyances to defraud creditors. The Estates countered with a cross-motion for summary judgment, claiming that, as a matter of law, the 1986 deeds are invalid for being the product of the unauthorized practice of law and that the deeds are fraudulent conveyances as to the third-party beneficiaries under Obed, Sr. and Helen's mutual wills. After a hearing, the trial court entered summary judgment in favor of Defendants, simply concluding that the 1986 deeds were valid.

## DECISION

When reviewing the grant or denial of summary judgment, we use the same standard as the trial court: whether the pleadings and evidence demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Miller by Miller v. Memorial Hosp. of South Bend, Inc.,* 679 N.E.2d 1329, 1330 (Ind.1997); Ind. Trial Rule 56(C). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991). Summary judgment will be affirmed on appeal if it is sustainable on any legal theory or basis found in the designated material. *Murphy v. Mortell,* 684 N.E.2d 1185, 1187 (Ind.Ct. App.1997), *trans. denied.*

---

3. Apparently, this was the first indication to Eugene and Sharon that Obed, Jr. and the children were not going to reconvey the property to his parents or their estates.

4. The LPCA foreclosure litigation, which had pended for approximately ten years, was concluded by way of a settlement agreement in on October 24, 1995, one week after Helen's Estate filed the complaint against Defendants. Pursuant to the agreement, the trial court dismissed with prejudice all claims and counterclaims filed by the parties, and the issue of the fraudulent conveyance of the 331 acres as to LPCA became moot.

5. Although the Estates never used the phrase "constructive fraud" in its memorandum in support of summary judgment, the numerous cases cited therein reveal that Helen's Estate was seeking summary judgment under such a theory.

Finally, the fact that both parties to an appeal request summary judgment does not change our standard of review. We consider each motion separately to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Von Haden v. Supervised Estate of Von Haden,* 699 N.E.2d 301, 303 (Ind.Ct. App.1998).

### I. *Fraudulent Conveyance*

■ The Estates assert that the trial court erred by denying their motion for summary judgment on their action for the return of the 331 acres. According to the Estates, the undisputed designated material reveals that the 1986 deeds were conveyances to defraud creditors.

■ Under Indiana law, a conveyance of real estate "made or suffered with the intent to hinder, delay, or defraud creditors or other persons of their lawful damages, forfeitures, debts or demands" are "void as to the persons sought to be defrauded." Ind.Code § 32–2–1–14 (*repeal, see now* Ind.Code § 32–2–7–1 *et. seq.*). Only a creditor may bring an action to set aside a fraudulent conveyance. *Browning v. Walters,* 616 N.E.2d 1040, 1047 (Ind.Ct. App.1993), *opinion adhered to on reh'g,* 620 N.E.2d 28. In discussing actions to set aside conveyances on the ground of fraud under a former statute nearly identical to I.C. § 32–2–1–14, it has been stated:

> ... [a conveyance fraudulent as to creditors] is neither void nor voidable as to persons other than creditors. By section 8064, Burns' 1926, it is declared that all conveyances made for the purpose of hindering or delaying creditors shall be void as to the persons sought to be defrauded. But, as between the parties and as to all others except creditors, such conveyances are good. Such conveyances are not absolutely void. They are only voidable at the suit of the injured party.

*Leasure v. Leasure,* 86 Ind.App. 499, 157 N.E. 11, 12 (1927), *modified on other grounds,* 86 Ind.App. 499, 158 N.E. 925 (citations omitted). Also, a conveyance of property in fraud of creditors is generally valid and binding as between a fraudulent grantor and grantee, their privies, heirs and devisees, and persons claiming under them. *Morgan v. Catherwood,* 95 Ind. App. 266, 167 N.E. 618, 622 (1929); *see also* 37 C.J.S. *Fraudulent Conveyances* § 175, p. 681.

In the present case, Obed, Sr. and Helen transferred title to their farm land to their grandchildren and therefore were grantors, not creditors. We therefore conclude that the Estates may not attack the validity of the 1986 deeds on the grounds that they were conveyances made to defraud creditors.

■ Nevertheless, the Estates argue that Sharon and Eugene may seek to set aside the deeds on a fraudulent conveyance theory because they were creditors of Obed, Sr. and Helen. According to the Estates, the mutual wills executed by Obed, Sr. and Helen were third-party beneficiary contracts. And, the Estates continue, Sharon and Eugene are third-party beneficiaries because they are named beneficiaries under the mutual wills. The Estates then argue that third-party beneficiaries fall within the broad definition of the term creditor. The Defendants counter that Sharon and Eugene, as beneficiaries under the mutual wills, are not creditors owed money by Obed, Sr. and Helen. They also argue that Sharon and Eugene are legatees under the wills and only acquired rights through Obed, Sr. and Helen.

As noted above, I.C. § 32–2–1–14 provides that conveyances made with the intent to defraud "creditors ... of their lawful damages, forfeitures, debts or demands[ ] *shall be void as to the persons sought to be defrauded.*" (*emphasis added* ). Here, Sharon and Eugene have not alleged that Obed, Sr. and Helen, either individually or collectively, conveyed the property with the intent to defraud them.

Indeed, we find no designated material in the record that would permit such an inference that Obed, Sr. and Helen attempted to defraud them as beneficiaries under their mutual wills.[6] Instead, their sole contention was that the conveyance of the farm land was to defraud LPCA, an undisputed creditor of Obed, Sr. and Helen. In light of this undisputed evidence, we do not hesitate to conclude that Sharon and Eugene were not creditors "sought to be defrauded" within the meaning of I.C. § 32–2–1–14. The trial court properly entered summary judgment in favor of the Defendants on the Estates' fraudulent conveyance theory.

## II. Unauthorized Practice of Law [7]

■ The Estates also claim that they were entitled to judgment, as a matter of law, because the 1986 deeds, which Rolene prepared, are void as being the product of the unauthorized practice of law.[8] The Defendants do not dispute that Rolene was not a licensed attorney. Instead, they contend that Rolene's actions did not amount to practicing law and that even if they did, such a violation of the State's code of professional conduct does not give rise to a separate civil cause of action or make the deeds void, *ab initio.*

We may not decide the issue of whether Rolene's conduct constitutes the unauthorized practice of law because such a determination is within the exclusive jurisdiction of our supreme court. *Miller v. Vance,* 463 N.E.2d 250, 253 (Ind.1984). Neverthe-

less, for purposes of this appeal, we assume that the deeds were the product of Rolene's unauthorized practice of law and decide whether this fact, standing alone, necessarily makes the deeds void, *ab initio.* We conclude that it is not.

The Estates have not cited, nor have we found, any Indiana cases dispositive of this issue. However, we have found somewhat analogous cases in other jurisdictions and find their reasoning persuasive. In *Wyche v. R.V. Works,* 373 S.W.2d 558 (Tex.Civ. App.1963), an action was brought to recover a real estate broker's commission. Defendant entered a contract with plaintiff, in which the Defendant granted plaintiff an option to purchase real estate for $93,000 and agreed that upon the exercise of said option by plaintiff, he would pay the commission on the purchase price to a real estate brokerage firm. The trial court entered summary judgment in favor of the plaintiff and the defendant appealed. On appeal, the defendant challenged the summary judgment, in part, on the grounds that the plaintiff had drafted the contract sued on, but was not a licensed lawyer and that the contract was therefore illegal, being in violation of a Texas statute. *Id.* at 560. The appellate court rejected the defendant's argument, explaining that "even if such a contract were prepared by one not a licensed lawyer, the validity of the contract would not be affected thereby." *Id.*

In *Frank v. Moore,* 1 Ohio App.2d 90, 30 O.O.2d 112, 198 N.E.2d 82 (1963), vendors

---

6. Indeed, such a position would be incredulous inasmuch as Obed, Sr. and Helen could have simply agreed to nullify or void their mutual wills.

7. Although not raised by the Defendants, the Estates did not allege in their complaints that Rolene prepared the 1986 deeds, that she did not have a license to practice law in Indiana at the time the deeds were prepared, or that her preparation of the deeds constituted the unauthorized practice of law. In fact, the complaints did not purport to challenge the validity of the 1986 deeds on the grounds that they were prepared by someone other than an attorney.

8. We note that the Estates do not allege fraud, defective execution or a lack of formal requisites as to the content and wording of the instruments. Indeed, the Estates appear to agree that the deeds conveying the property reflect the actual intentions of the parties to the transaction. Their sole contention is that the deeds were prepared by Rolene, who was not an attorney, and that such an act constituted the unlawful practice of law, and that the deeds were thereby rendered void, *ab inition.*

brought an action for specific performance of a contract to purchase realty. The trial court dismissed the suit based solely on the grounds that the contract had been prepared by a person not licensed to practice law. Specifically, the trial court concluded that the contract was "illegal and void and totally unenforceable; that the plaintiffs were thereby prohibited from introducing further testimony in the case, and that they were decreed to have no rights under said contract." *Id.* at 83. The appellate court disagreed, holding that the fact that the contract to purchase realty had been prepared by a person not licensed to practice law was not grounds for the trial court's refusal to determine whether the vendors were entitled to specific performance and did not make the contract void. *Id.* at 84. The trial court reasoned, in part, that the contract to purchase the real estate existed independently of whatever individual was instrumental in reducing the contract to writing. *Id.*

In the present case, Rolene was not a party to the deeds, and there is no allegation that she had any direct interest in the conveyances. The unlawful practice of law, if any, in the present case did not void the deeds because such alleged unlawful act was wholly disconnected from Obed, Sr. and Helen's intentions to convey the property to their grandchildren and the subject matter of the conveyance. The alleged loss of the farm land suffered by the Estates was not caused by Rolene's act of preparing the contents the deeds. Accordingly, we conclude that the deeds were not void, *ab initio*, by the mere fact that those instruments were prepared by a person not licensed to practice law in Indiana.

## III. Constructive Trust Based on a Constructive Fraud Theory

■■■ The Estates contend that they are entitled to summary judgment because the designated materials give rise to a constructive trust in their favor. A constructive trust is a creature of equity, devised to do justice by making equitable remedies available against one whom through fraud or other wrongful means acquires property of another. *Criss v. Bitzegaio,* 420 N.E.2d 1221, 1224 (Ind. 1981); *Shafer v. Lambie,* 667 N.E.2d 226, 229 (Ind.Ct.App.1996). Discussing the law on constructive trusts, our supreme court has stated:

A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may rise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it.

*Melloh v. Gladis,* 261 Ind. 647, 309 N.E.2d 433, 438–39 (1974)(quoting 5 Scott on Trusts § 404.2). This type of trust is more in the nature of an equitable remedy than an independent cause of action, *Chosnek v. Rolley,* 688 N.E.2d 202, 211 (Ind.Ct. App.1997), and the law is firmly established that fraud, either actual or constructive, is a prerequisite to the imposition of a constructive trust. *Brown v. Brown,* 235 Ind. 563, 135 N.E.2d 614, 616 (1956).

■■■ The Estates seek to impose a constructive trust based on a constructive fraud theory. Constructive fraud "arises by operation of law from a course of conduct which, if sanctioned by law, would 'secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud.'" *Paramo v. Edwards,* 563 N.E.2d 595, 598 (Ind.1990) (quoting *Beecher v. City of Terre Haute,* 235 Ind. 180, 132 N.E.2d 141, 143 (1956)). It is "based on the premise that there are situations which might not amount to actual fraud, but which are 'so likely to result in injustice that the law will find a fraud despite the absence of fraudulent intent.'"

*Stoll v. Grimm,* 681 N.E.2d 749, 757 (Ind.Ct.App.1997)(quoting *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 324 (Ind.Ct.App. 1991)).

■■■■■ Constructive fraud may be found where one party takes unconscionable advantage of his dominant position in a confidential or fiduciary relationship. *Id.; see Hall v. Indiana Dept. of State Revenue,* 170 Ind.App. 77, 351 N.E.2d 35, 38 (1976) ("Any breach of a duty arising from a confidential or fiduciary relation, without any actual fraudulent intent gains an advantage at the expense of any one to whom he owes such duty, amounts to a constructive fraud."). In addition, a representation regarding future conduct can, in some situations, give rise to a constructive fraud. *Wells v. Stone City Bank,* 691 N.E.2d 1246, 1250 (Ind.Ct.App.1998), *trans. denied.* For example, a constructive trust may arise where there is a confidential relationship between the grantor and the grantee, and the grantor relies upon the transferee's promise to reconvey the property in the future. 76 Am.Jur.2d Trusts, §§ 219–222, p. 244, 2247–48. It has been stated that the mere violation of an oral promise made by the grantee of land to the grantor to reconvey the land back to the grantor does not create a constructive trust; however, a constructive trust may arise where, in addition to an oral promise to reconvey, there is "fraud or constructive fraud arising out of a confidential or fiduciary relationship where one party dominates a weaker party who reposes confidence in that dominant party." *Hunter v. Hunter,* 152 Ind.App. 365, 283 N.E.2d 775, 781 (1972).

We find the Estates' principal contention for the imposition of a constructive trust is that the undisputed designated material reveals that Obed, Jr. breached his fiduciary and confidential relationship when he prevailed upon his parents to transfer their property into the names of his children to protect it from a possible deficiency judgment in a pending lawsuit and his subsequent refusal to reconvey the lands to his parents (or their estates) at the conclusion of the lawsuit despite his oral promise to do so. The Defendants argue that because the Estates have alleged in the complaints that the 1986 deeds executed by Obed, Sr. and Helen were to defraud creditors, the Estates are precluded from seeking the imposition of a constructive trust based on Obed, Jr.'s alleged promise to reconvey the property.

■■■■■ A plaintiff seeking an equitable remedy of a constructive trust must escape the defense of unclean hands. "It is the general rule that one who vests the legal title to his property in another, for the purpose of putting out of the reach of and defrauding his creditors, cannot recover the property on the theory that there was no consideration for the conveyance or that there was an agreement to reconvey." *Lane v. Gugsell,* 113 Ind.App. 676, 47 N.E.2d 835, 837 (1943) (citing *Bellin v. Bloom,* 217 Ind. 656, 28 N.E.2d 53 (1940)).[9] An exception to this rule is exists when a relation of trust and confidence exists, and the party in whom trust is reposed has obtained a benefit, the burden will be upon him to show that the transaction was fair and proper, and relief will not be denied the one least at fault if he has been led into the illegal transaction because of ignorance and the reliance upon trust in the other.... Where it appears that the interests will be better promoted by granting relief to the plaintiff than by denying it, courts of equity, acting with proper caution, may intervene even though the parties are equally guilty.

*Id.* (citations omitted).

■■■■■ In the present case, we believe that the designated materials give rise to

---

9. See also 76 Am.Jur.2d Trusts § 710, p. 695 ("The defense of illegality, including a conveyance to hinder, delay, or defraud creditors, can defeat an implied [or constructive] trust under appropriate circumstances, although the policy against unjust enrichment outweighs that consideration where there are doubtful circumstances about the claim of fraud on creditors.").

conflicting inferences regarding whether Obed, Sr. and Helen were led into the illegal transaction because of ignorance and the reliance upon their confidential and fiduciary relationship with Obed, Jr. Neither the Estates nor the Defendants designated any evidence as to whether Obed, Sr. and Helen were led into making the conveyance because of ignorance. Further, a confidential or fiduciary relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Drudge v. Brandt,* 698 N.E.2d 1245, 1250 (Ind.Ct.App.1998). The question of whether a confidential relationship exists is one of fact to be determined by the finder of fact. *Dawson v. Hummer,* 649 N.E.2d 653, 661 (Ind.Ct.App.1995). We believe the designated materials give rise to conflicting inferences as to whether Obed, Jr. held a dominant position in the relationships he had with Obed, Sr. and Helen at the time of the property was conveyed. While the Estates' designated materials indicating that Obed, Jr. requested his parents to make the fraudulent conveyance, the evidence leads to conflicting inferences as to whether Obed, Jr. exercised superiority, dominance or influence over Obed, Sr. and Helen or whether they simply decided to make the conveyance to protect their property from a possible deficiency judgment. Accordingly, we find that genuine issues of material fact exist precluding summary judgment on the Estates' constructive fraud claim.

The Defendants also claim that they are entitled to summary judgment because the Estates' constructive trust action is barred by six-year statute of limitations on fraud claims. According to the Defendants, the Estates' cause of action for the imposition of a constructive trust accrued in 1986, when the deeds were executed. Alternatively, the Defendants appear to claim that the constructive fraud claims accrued in August of 1989, when Helen and Eugene were informed by the family attorney that they had a cause of action to set aside the 1986 deeds. The Estates respond that their constructive fraud claim did not accrue until April of 1995, when Obed, Jr. first disclosed his intention not to return the land. We agree with the Estates.

■ Constructive trusts are subject to the six-year statute of limitations for fraud. *Shafer v. Lambie,* 667 N.E.2d 226, 230 (Ind.Ct.App.1996). In assessing the accrual of a cause of action for fraud, this court has determined that the discovery rule is applicable. *Id.* The cause of actions accrue and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *Id.* Thus, the statute runs when the resultant damage of a tortious act is susceptible of ascertainment. *Id.* at 231.

■ Here, in 1986, Obed, Jr. allegedly induced his parent to convey property out of their names with a promise to reconvey the 331 acres back to them once the family's foreclosure litigation with LPCA concluded. However, the LPCA litigation did not conclude until 1995. Thus, under Obed, Jr.'s promise, the Defendants' obligation to reconvey the land did not arise until 1995. The first reasonable occasion for the Estates to have realized that the Defendants claimed complete ownership of the property without regard to Obed, Jr.'s promise to reconvey the land was in 1995, when Obed, Jr. indicated that he was not going to return the property to the Estates as promised and evicted Eugene from the property. The fact that in 1989, an attorney revealed to Helen and Eugene that they might have a cause of action under a constructive trust theory to set aside the 1986 deeds is not dispositive because the LPCA litigation was still pending at the time and the Defendants had not claimed complete ownership in the property without regard to Obed, Jr.'s promise to reconvey. Indeed, in 1989, Obed, Jr. still had Helen convinced that the 331 acres would be reconveyed at the conclusion of the LPCA litigation, as evi-

denced by her statements to the attorney that there was no need to file suit because Obed, Jr. was going to return the land. We therefore conclude that the statute of limitations does not bar the Estates' claim for a constructive trust.

In conclusion, the trial court properly entered summary judgment in favor of the Defendants on the Estates' fraudulent conveyance and unauthorized practice of law claims. However, genuine issues of material fact preclude summary judgment on the Estates' constructive fraud claim.

Affirmed in part, reversed in part, and remanded.

KIRSCH, J., and BROOK, J., concur.