Obed A. KALWITZ, Jr., Rolene Kalwitz, Obed Kalwitz, III, and Lorene Mohlke, Appellants–Respondents,

v.

The ESTATES OF Helen KALWITZ and Obed A. Kalwitz, Sr., Deceased, Sharon K. Grieger and Eugene D. Kalwitz, as Co–Executors and Individually, Appellees–Petitioners.

No. 46A03–0105–CV–152.

Court of Appeals of Indiana.

Nov. 26, 2001.

Stephen Bower, Cohen and Thiros, Merrillville, Indiana, Attorney for Appellants.

Stephen A. Kray, LaPorte, Indiana, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Sharon Grieger and Eugene Kalwitz, both individually and as co-executors of the Estate of Obed Kalwitz, Sr. (deceased) and Grieger, as the executrix of the Estate of Helen Kalwitz (deceased) (collectively "the Estates"), filed this action against Obed Kalwitz, Jr. ("Obed, Jr."), Rolene Kalwitz ("Rolene"), Obed Kalwitz, III (Obed, III), and Lorene Mohlke ("Mohlke") (collectively "the Defendants"), to quiet title and to impose a constructive trust on certain real property that Obed, Sr. and Helen allegedly conditionally transferred to their grandchildren, Obed, III and Mohlke. After a hearing on cross-motions for summary judgment, a special judge entered an order granting summary judgment in favor of the Defendants.

The Estates appealed, and this court affirmed the entry of summary judgment on the Estates' fraudulent conveyance and unauthorized practice of law claims, but reversed the entry of summary judgment on the Estates' constructive fraud claim. *See Estates of Kalwitz v. Kalwitz,* 717 N.E.2d 904 (Ind.Ct.App.1999). On remand, after a bench trial, the trial court found a constructive trust in favor of the Estates and ordered that the title to the disputed real property be conveyed to the Estates. The Defendants appeal from that order and present a single dispositive issue, namely, whether the trial court abused its discretion when it found that the Estates had not waived the Dead Man's statute.[1]

---

1. Our resolution of this issue obviates the need to address the other issues presented by the Defendants. *See Miller v. NBD Bank, N.A.,* 701 N.E.2d 282, 287 (Ind.Ct.App.1998).

We affirm in part, reverse in part and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The facts as stated by this court in *Kalwitz I* are as follows:

In 1940, Obed, Sr. married Helen, and four children were born to the marriage: Obed, Jr., Eugene, Sharon, and Ted. Obed, Sr. and Helen raised their children in their home on a 312 acre farm in LaPorte County. By the late 1970's, Obed, Sr. and Helen had acquired approximately 290 acres of additional farm land in LaPorte County.

Although Obed, Sr. and Helen owned the property, they farmed it as a partnership with their children, sharing in the expenses and profits. Obed, Jr., the elder child, became the head of the Kalwitz' family farming operation and was responsible for the day-to-day operation of the farm when Obed, Sr. and Helen retired from active farming in 1978.

In 1979, Ted, the youngest of the children, died. That same year, Obed, Sr. and Helen executed mutual wills, in which 331 acres of their property—the 312 acre homestead plus nineteen additional acres—were to go to Sharon and Eugene following a life estate in the surviving spouse (parent). The remaining 270 acres were to go to Obed, Jr. and Eugene following a life estate in the surviving spouse.

In the early 1980's, Obed, Jr. asked his parents and his brother, Eugene, to co-sign on a loan so that he could purchase his own farm land. Obed, Sr., Helen, and Eugene agreed to co-sign for the loan and executed a promissory note in favor of LaPorte Production Credit Association (LPCA). To secure payment for the loan, Obed, Sr. and Helen executed a second mortgage on the 270 acres of their farmland as collateral. In 1985, LPCA filed a mortgage foreclosure action on the promissory note after Obed, Jr. and his wife, Rolene, failed to pay the note. The Kalwitz family answered the complaint and filed a counterclaim, alleging lender fraud.

Subsequently, in November of 1986, while the LPCA litigation was still pending, Obed, Jr. persuaded Obed, Sr. and Helen to transfer title of their 312 acre homestead plus 19 additional acres of farmland to his children, 16 year old Obed III and 21 year old Lorene, to protect the property from a possible deficiency judgment in the foreclosure action. Obed, Jr.'s wife, Rolene, prepared the deeds to transfer title to the property. With the apparent thought of protecting their property from the pending litigation, and in reliance upon Obed, Jr.'s oral promise to reconvey the subject acreage back to them after the LPCA litigation concluded, Obed, Sr. and Helen signed the deeds conveying the property to their grandchildren without receiving any consideration in return. The weekend after Obed, Sr. and Helen deeded the property to their grandchildren, Obed, Jr. assured Sharon that the conveyance of the property "was just a protective measure in the event the [LPCA] lawsuit did go bad so

We do not address whether the evidence was sufficient to support the trial court's conclusion that a confidential relationship existed between Obed, Sr. and Obed, Jr., whether the trial court erred when it rejected the Defendants' unclean hands defense, or whether the trial court abused its discretion when it admitted certain evidence over the Defendants' hearsay objections. We note that the Defendants might make the same hearsay objections on remand, but our resolution of the Dead Man's statute issue will likely render some of those objections unnecessary.

at least our parents [have] a chance to keep their home."

After the transfer, Obed, Sr. and Helen continued to reside on the 312 acre homestead and treat the property as their own. Obed[,] Sr. died in 1989, and Helen and Eugene consulted their family attorney regarding opening Obed[,] Sr.'s estate. They told the attorney about the 1986 deeds transferring title to the 331 acres to Obed[,] III and Lorene. The family attorney informed Helen and Eugene that they might be able to sue Obed, Jr. and his children under a constructive trust theory to recover the property. Helen responded that there was no need to sue because Obed, Jr. was going to give the property back. In April of 1995, Helen died. The day after Helen's funeral, Obed, Jr. informed Eugene and Sharon that he was not going to reconvey title to the 331 acres to the estates of his parents and ordered Eugene off the property. On October 17, 1995, Helen's Estate filed a "Complaint for Return of 331 Acres" against the Defendants, seeking an order declaring a constructive trust on the property and to quiet title to the property in Helen's Estate or Helen's beneficiaries. The one-count complaint, which did not expressly identify any theory for the imposition of a constructive trust, alleged that Obed, Sr. and Helen deeded 331 acres to Obed[,] III and Lorene at the request and instruction of Obed, Jr. and his wife, Rolene; that Obed, Jr. and Rolene occupied a position of trust and confidence with Obed, Sr. and Helen at the time of the transfer; that the transfer was made without consideration to protect the property from an adverse judgment in a pending lawsuit; that the transfer was made with the understanding and in reliance upon Obed, Jr. and Rolene's promise to return the property to them at the conclusion of the pending

LPCA litigation; and that the Defendants' refusal to return the land was unreasonable, in bad faith, and an attempt to defraud the Estate.

On November 9, 1995, the Defendants filed a motion to dismiss the complaint pursuant to Ind. Trial Rule 12(B)(6), and Helen's Estate responded with a motion for summary judgment, seeking the imposition of a constructive trust based upon a constructive fraud theory, though not expressly designated as such. After conducting a hearing, the trial court denied both motions.

On July 10, 1996, Obed, Sr.'s Estate, Sharon, and Eugene filed a complaint against the Defendants which was nearly identical to the complaint filed by Helen's Estate. Defendants subsequently moved for summary judgment on the Estates' complaints, which they characterized as asserting a claim to declare the 1986 deeds invalid as conveyances to defraud creditors. The Estates countered with a cross-motion for summary judgment, claiming that, as a matter of law, the 1986 deeds are invalid for being the product of the unauthorized practice of law and that the deeds are fraudulent conveyances as to the third-party beneficiaries under Obed, Sr. and Helen's mutual wills. After a hearing, the trial court entered summary judgment in favor of Defendants, simply concluding that the 1986 deeds were valid.

*Kalwitz I,* 717 N.E.2d at 908–09.

This court affirmed the trial court's entry of summary judgment in favor of the Defendants on the fraudulent conveyance and unauthorized practice of law claims, but reversed the entry of summary judgment on the constructive fraud claim. *Id.* at 915. Following a bench trial, the trial court found a constructive trust in favor of

the Estates and ordered that the title to the disputed real property be conveyed to the Estates.

## DISCUSSION AND DECISION

The Defendants maintain that the trial court abused its discretion when it found that the Estates had not waived the Dead Man's statute. Specifically, the Defendants maintain that Obed, Jr. should have been rendered competent to testify in light of exhibits introduced by the Estates which contain Obed, Jr.'s prior testimony, as well as Obed, Sr. and Helen's prior testimony. We must agree.

 Indiana's Dead Man's statute provides in relevant part that in suits or proceedings:

(1) in which an executor or administrator is a party;

(2) involving matters that occurred during the lifetime of the decedent; and

(3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator ... a person:

(1) who is a necessary party to the issue or record; and

(2) whose interest is adverse to the estate;

is not a competent witness as to matters against the estate;

[However,] ... [i]n cases where:

(1) a deposition of the decedent was taken; or

(2) the decedent has previously testified as to the matter;

and the decedent's testimony or deposition can be used as evidence for the executor or administrator, the adverse party is a competent witness as to any matters embraced in the deposition or testimony.

Ind.Code § 34–45–2–4. The general purpose of this statute is to protect a decedent's estate from spurious claims. *Fisher v. Estate of Haley*, 695 N.E.2d 1022, 1026 (Ind.Ct.App.1998). Dead Man's statutes are rules of fairness and mutuality requiring that, "when the lips of one party to a transaction are closed by death, the lips of the surviving party are closed by law." *Id.* at 1026–27 (citation omitted). Rather than excluding evidence, the statute prevents a particular class of witnesses from testifying as to claims against the estate. *Id.* at 1027. The application of the statute is limited to circumstances in which the decedent, if alive, could have refuted the testimony of the surviving party. *Id.* (citation omitted). Here, we find that the Estates' lawsuit against the Defendants falls squarely within Indiana Code Section 34–45–2–4.

 Where the trial court rules on witness competency, the ruling will not be reversed absent a clear abuse of discretion. *Id.* An abuse of discretion will be found when the ruling is against the logic and effect of the facts and circumstances before the court. *Id.* Here, on at least two occasions, Obed, Jr. moved the trial court to find that the Dead Man's statute had been waived to render him competent to testify during trial. The trial court denied those motions and precluded Obed, Jr.'s testimony.

 When a party introduces a witness's deposition or admissions in court, that party is treating, and hopes that the court will treat, the discovered information as establishing some relevant fact about the case. *See Taylor v. Taylor*, 643 N.E.2d 893, 895 (Ind.1994). In such circumstances, if the deposition testimony or admissions concern matters within the scope of the Dead Man's statute, then the party who offered the deposition testimony or admissions into evidence would have

waived the incompetency of the witness, because that party has relinquished the benefit bestowed by the statute. *Id.* In addition, Indiana Code Section 34–45–2–4 expressly provides that an otherwise incompetent witness will be rendered competent if the decedent's testimony or deposition is introduced as evidence at trial.

Here, the Estates introduced at least two exhibits, the admission of which constituted waiver of the Dead Man's statute with respect to Obed, Jr.[2] The first such exhibit is an excerpt from Obed, Jr.'s testimony at a hearing in a bankruptcy proceeding. The Estates contend that the testimony constitutes "binding judicial admissions," which, they contend, "do not allow contradiction." Brief of Appellees at 17. However, as we already noted, our supreme court has specifically held that the introduction into evidence of a party's admission waives the Dead Man's statute.[3] *See Taylor,* 643 N.E.2d at 895. In addition, the Estates introduced into evidence Obed, Sr. and Helen's depositions given during the LPCA litigation, which clearly waive the Dead Man's statute.[4] *See* I.C. § 34–45–2–4. Accordingly, we conclude that the trial court abused its discretion when it found that the Estates had not

waived the Dead Man's statute. We therefore remand for a new trial, and, assuming that the Estates again introduce into evidence either deposition testimony or admissions rendering the Dead Man's statute waived, the trial court should allow Obed, Jr. to testify regarding matters which occurred both prior to and after the deaths of Obed, Sr. and Helen.[5]

■ But Obed, Jr. also contends that Eugene and Sharon were incompetent to testify under another section of the Dead Man's statute, Indiana Code Section 34–45–2–5, which provides:

(a) This section applies to suits by or against heirs or devisees founded on a contract with or demand against an ancestor:

(1) to obtain title to or possession of property, real or personal, of, or in right of, the ancestor; or

(2) to affect property described in subdivision (1) in any manner.

(b) Neither party to a suit described in subsection (a) is a competent witness as to any matter that occurred before the death of the ancestor.

However, this statute does not apply here because Obed, Sr. did not hold the disput-

---

**2.** Although not argued on appeal, Rolene's incompetence to testify would also be waived, assuming that any exclusion of her testimony was based solely on her husband's incompetence to testify. *See* Ind.Code § 34–45–2–9; *Taylor,* 643 N.E.2d at 896.

**3.** While the court specifically refers to answers to requests for admission pursuant to Trial Rule 36, we see no reason why other types of admissions should be treated any differently.

**4.** The plain language of the statute indicates that any deposition of the decedent that can be used as evidence will render an adverse party competent to testify. In other words, the statute does not provide that only depositions taken in the instant litigation will quali-

fy. Accordingly, here, it is of no consequence that Obed, Sr. and Helen's depositions were taken in the LPCA litigation, as the testimony contained therein is relevant to the issues presented here.

**5.** The Estates argue that this issue is waived because the Defendants did not make an offer of proof regarding Obed, Jr.'s proffered testimony. We cannot agree. We have previously held that "[w]here the objection is to the right of the witness to testify at all, the party introducing such witness need not state what he expects to prove, because the question for the trial court to decide is not as to the competency of the testimony, but the competency of the witness himself." *Senff v. Estate of Levi,* 515 N.E.2d 556, 559 (Ind.Ct.App. 1987), *trans. denied.*

ed property at the time of his death. *See LaPorte Prod. Credit Ass'n v. Kalwitz,* 567 N.E.2d 1202, 1205 (Ind.Ct.App.1991) (finding predecessor statute inapplicable since the litigation did not concern the grandchildren "in the capacity of heirs or devisees" of Obed, Sr.), *trans. denied; Summerlot v. Summerlot,* 408 N.E.2d 820, 825 (Ind.Ct.App.1980); *see also* ROBERT LOWELL MILLER, JR., 13 INDIANA PRACTICE, INDIANA EVIDENCE § 601.109 (2d ed.1995). Accordingly, the trial court did not abuse its discretion when it allowed Eugene and Sharon to testify.

Affirmed in part, reversed in part, and remanded for further proceedings.

SHARPNACK, C.J., and RILEY, J., concur.